## Case No. 11,182.

### PIPER v. MOON et al.

[10 Blatchf. 264; 6 Fish. Pat. Cas. 180; 3 O. G. 4.] [1]

Circuit Court, S. D. New York. Dec. 16, 1872. [2]

#### PATENTS—NOVELTY—INFRINGEMENT.

1. The claim of the letters patent granted to Enoch Piper, March 19th, 1861, for an "im-

---

1 [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are taken from 10 Blatchf. 264, and the statement from 6 Fish. Pat. Cas. 180.]

2 [Affirmed in 91 U. S. 44.]

provement in method of preserving fish," namely, "preserving fish, or other articles, in a close chamber, by means of a freezing mixture, having no contact with the atmosphere of the preserving chamber, substantially as set forth," is void, for want of novelty.

2. Whenever an article, already frozen, is preserved in a frozen state, in a close chamber, by means of a freezing mixture, which has the effect to keep the frozen article in such frozen state, while, at the same time, such mixture has no contact with the atmosphere of the preserving chamber, the claim of the patent is infringed.

[3. Cited in Burke v. Partridge, 58 N. H. 351, to the point that, although intention is the primary rule of construction, yet language invoked to support a particular theory must be such as is fit, when compared with the whole instrument, to express the imputed intention.]

3 [Final hearing upon pleadings and proofs.

[Suit brought [by Enoch Piper against George T. Moon and others] on letters patent [No. 31,736] for "improvement in the method of preserving fish," granted to complainant March 19, 1861.

[A suit upon the same letters patent will be found reported in the case of Piper v. Brown [Case No. 11,180].

[The above engraving shows the apparatus used by complainant, and described, by words and drawing, in his letters patent. A is a box of wood, or other suitable material, in which the fish are laid, in small quantities, on a rack, R. This box is surrounded by a packing of charcoal or other suitable nonconducting material. 1, 2, 3, 4 are metallic pans, which, being filled with a freezing mixture, such as salt and ice, are then set over the fish, and the cover A is shut upon them. C is the large preserving-box in which the fish are afterward packed, and B the larger box in which C is inclosed. The space between these boxes is designed to be filled with charcoal or other non-conducting material. D, D, D are metallic tubes, opening at the upper ends, for the introduction of the freezing mixture; a, a are slats, which may be removed at pleasure, for the purpose of putting in or taking out the fish. B' is the cover of the outer box, and is provided with holes, D', through which the tubes may project, so as to be

---

3 [From 6 Fish. Pat. Cas. 480.]

charged with the freezing mixture when the box is closed. The mode of using this apparatus is more fully described in the opinion of the court below.] [3]

Causten Browne and Jabez S. Holmes, for plaintiff.

George Gifford, for defendants.

BLATCHFORD, District Judge, in deciding this case, said, in substance: The patent to the plaintiff, granted March 19th, 1861, is for an "improvement in the method of preserving fish." The specification says: "The nature of my invention consists in a method of preserving fish, and other articles, by placing them within a chamber, and cooling the latter by means of a freezing mixture, so applied that no communication shall exist between the interior of the preserving chamber and that of the vessels in which the freezing mixture is placed. The most important application which I propose to make of my invention is for preserving salmon, which are only taken in large quantities in high northern latitudes, in summer, so remote from our large cities, that they can be made available in a fresh state only by artificial congelation. Hitherto, the only method in use for preserving this kind of fish in a fresh state, has been to pack them with crushed ice in barrels or boxes. This method, however, owing to the melting of the ice, and the consequent moistening of the fish, fails to preserve them fresh and good for more than a month, at most; whereas, by my new method and treatment, they can be kept as fresh and sweet as when first caught, and for any desirable length of time, even for years. I do not profess to have invented the means of producing artificial congelation, nor to have discovered the fact that no decay takes place in animal substances, so long as they are kept a few degrees below the freezing point of water; but, the practical application of these to the art of preserving fish and meats, as above described, is a new and very valuable improvement. The apparatus for freezing the fish, and keeping them in a frozen state, may be constructed in various ways and of different shapes. The apparatus shown in the drawing, however, will suffice to illustrate the principle and mode of operation." The specification then describes, with references to the drawings, a method of freezing the fish, by laying them, in small quantities, on a rack, in a box of wood, or other suitable material, which is surrounded by a packing of charcoal, or other suitable non-conducting material. Metallic pans, filled with a freezing mixture, such as salt and ice, are then set over the fish, and the cover is shut upon them. The specification proceeds: "The temperature in the box soon falls to ten or fifteen degrees below the

freezing point of water, and, in about twenty-four hours, the mixture being changed once in twelve hours, the fish will be frozen completely through. After being thus frozen, the fish or meats may, if desired, be covered with a coating of ice, by immersing them a few times in ice-cold water, or by applying the water with a brush, or swab, several times, forming a coat of about one-eighth of an inch in thickness. To prevent the ice from cracking off, I then apply to the fish, when they are to be kept an unusual length of time, a cover of cloth, and, in the same manner, cover the cloth with another coating of ice; or, they may be coated with gum-arabic, India-rubber, gutta-percha, tin-foil, or any suitable substance, either in combination or separately, that will effectually exclude the air, and prevent the juices from escaping by evaporation, thereby preserving the same plump and fresh appearance as when first frozen." The specification then goes on to say, that the fish are then packed closely together, in a large preserving box, which is enclosed in a still larger box, the space between the two boxes being filled with charcoal, or other non-conducting material, to exclude the heat; that metallic tubes pass through the inner box, which are open at the upper ends, for the introduction of a freezing mixture, the lower extremities being formed with flanges screwed to the bottom of the box; that a small tube leads from the bottom of each tube to the outside of the outer box, to draw off the brine from the tubes; that the tubes project, at the top, through the cover of the outer box, when it is shut down, so that they may be charged with the freezing mixture, without opening the box; and, that, by keeping the tubes filled with the mixture of salt and ice, the temperature of the preserving chamber can be maintained, for any length of time, below the freezing point, and fish surrounded by the dry and freezing atmosphere will be preserved as fresh and good as when first caught, and for a much longer period than by any other method. The patentee adds: "I do not desire to be understood as confining myself to the use of the specific apparatus above described, nor to the use of either or both the preliminary processes of freezing and coating, but I have described the mode of operation which, by experience, I have found best for preserving the most delicate varieties of fish. In the case of meats, it is not necessary to resort to the coating process, especially beef and pork, preserved for salt packing, in warm weather, which can be done by this treatment, with no more loss than in the best winter weather, while the cold pickle, or brine, of the dissolving salt and ice, is ready made, and may be drawn off, as required, to pickle the barrels, after packing the meats," &c. The claim is in these words: "Preserving fish, or other articles, in a close chamber, by means of a freezing mixture, having no contact with the

[3] [From 6 Fish. Pat. Cas. 480.]

atmosphere of the preserving chamber. substantially as set forth."

In this specification, as is usually the case, the patentee first sets forth the nature of his invention, by stating in what it consists; and we expect to find that the claim corresponds with such statement of the nature of the invention, whatever may be set forth in the intervening descriptive part of the specification. The claim in the present case is not so worded as not to cover a process, or sub-process, less than the entire process, or series of processes, described in the specification.

The statement of the nature of the invention says that it consists in a method of "preserving" fish and other articles, by placing them within a chamber, and cooling the latter by means of a freezing mixture, so applied that no communication shall exist between the interior of the "preserving" chamber, and that of the vessels in which the freezing mixture is placed. The claim is for "preserving" fish or other articles, in a close chamber, by means of a freezing mixture, having no contact with the atmosphere of the "preserving" chamber, substantially as set forth. What is the meaning of the word "preserving," as so used, and what is the chamber that is so referred to as the "preserving" chamber? Manifestly, the word refers to the process to which the article is subjected in the chamber between the interior of which and the interior of the vessels containing the freezing mixture, there is no communication. That chamber is the preserving chamber. That chamber may be used to freeze the article by means of a freezing mixture, applied as stated, as well as to preserve it afterwards by means of a freezing mixture, applied as stated; and the claim may cover the process when the chamber is used both to so freeze and so preserve the article, and also when it is used only to so freeze the article, and also when it is used only to so preserve the article. The article is preserved, when it is only frozen in the chamber. It is preserved, when it is only kept in the chamber, after being first frozen elsewhere. It is preserved, when it is frozen in the chamber, and then continues to remain in the chamber. That this is the scope of the claim is shown by the fact, that the specification speaks of "the preliminary processes of freezing and coating," and states that the patentee does not confine himself to the use of either or both of those preliminary processes. The preliminary process of freezing referred to, is described as one of freezing the article in a box, where the open pans of salt and ice are shut up in the box with the article. It is not the process referred to in the claim, which expressly requires that the article shall be in a close chamber, and that the freezing mixture shall have no contact with the atmosphere of that chamber. Therefore, whenever an article, already frozen, is preserved in a frozen state, in a close chamber, by means of a freezing mixture, which has the effect to keep the frozen article in such frozen state, while at the same time such mixture has no contact with the atmosphere of the preserving chamber, the claim of the patent is infringed, provided that it is done "substantially as set forth" in the specification. Full effect must be given to the words, "substantially as set forth." How is it set forth that the process must be practiced? It is not required that there shall be no contact between the article that is undergoing preservation and the metal which is interposed between such article and the freezing mixture. On the contrary, the specification says, that the fish are "packed closely together" in a box, directly through which run the metallic tubes which contain the freezing mixture. If the fish are thus packed closely together, some of them must be thus packed around the tubes. There is no direction that none of them are to be in contact with the tubes. It is true, that the specification speaks of the fish as being preserved because surrounded by a dry and freezing atmosphere. They will be surrounded by so much of a dry and freezing atmosphere as can surround fish packed closely together in contact with the tubes. All the atmosphere there is will be dry and freezing.

With this view of the claim, the invention covered by it, so far as preserving the frozen article is concerned, (and the claim covers that by itself,) is anticipated by what is proved in regard to the use of the process of preserving frozen ice cream. Anterior to the patentee's invention, ice cream, frozen, was preserved in a frozen state, in a close chamber, by means of a freezing mixture which had no contact with the atmosphere of the chamber. The frozen ice cream was thus preserved in a frozen state for a length of time, in one instance, as is shown, twenty-four days, and it might have been preserved an indefinite length of time by renewing the freezing mixture. The freezing mixture surrounded the metallic vessel containing the frozen ice cream, instead of being in pipes which ran through such vessel; but that made no difference in the process. Some of the frozen ice cream was in contact with the metal interposed between it and the freezing mixture, as some of the fish, in the practice of the plaintiff's process, are in contact with the metal interposed between them and the freezing mixture. All the atmosphere there was in the vessel containing the frozen ice cream was dry and freezing. The frozen ice cream was, in its frozen state, not a liquid, but a solid. It was no more a liquid than a frozen fish is a liquid. A fish, before being frozen, consists largely of watery particles. If it did not, it could not be frozen, for it is the watery particles in it that are frozen. What is frozen in the ice cream, and what is frozen in the fish, is the same thing, the liquid parts. Those are proportionally greater in the unfrozen ice cream than in the unfrozen fish. That is the only difference.

The specification of the patent, in describ-

ing the process claimed, describes the process previously used for preserving frozen ice cream. All that the patentee has done, according to his claim, is to take the frozen ice cream out of the vessel, and put into it a fish or other article, frozen or unfrozen. That is no patentable invention. If the process of preserving the frozen ice cream had not existed previously, the use of such process, in the manner stated, would be within the claim of the patent, and would be an infringement of it. The prior use of such process must, therefore, be an anticipation of the claim of the patent, at least, in a case like this.

The patentee may be the first person who has practically succeeded in introducing into the market, at all seasons, salmon as fresh as when first caught, and may thus have supplied a great desideratum, and have established a business that is commercially profitable. He may have invented something, in that connection, which is capable of being protected by a patent, and he may have described in this specification, or shown in the model or drawings accompanying it, something which may be claimed, and well claimed, as an invention, and which may be secured to him by a reissue. But, the difficulty with the present claim is, that it is too broad, and that it covers nothing but a process, and that a process practised before, substantially in the manner set forth in the specification.

For these reasons, the bill must be dismissed, with costs.

[On appeal to the supreme court, the decree of this court was affirmed. 91 U. S. 44.]

[For other cases involving this patent, see note to Piper v. Brown, Case No. 11,180.]