## WARING v. JOHNSON.

### (Circuit Court, S. D. New York. February 4, 1881.)

1. RE-ISSUE No. 8,199—IMPROVEMENT IN POCKET CHECK-BOOKS—NOVELTY.

   Re-issued letters patent No. 8,199, for an " improvement in pocket check-books," contained, *inter alia*, the following claim : "(1) The combination in a check-book of checks and stub pieces of substantially the same size, so united that two checks lie between every two stub pieces, substantially as specified and set forth." *Held*, that such claim was not void for want of novelty.

2. SAME—PATENT No. 191,436—IMPROVEMENT IN BANK CHECK-BOOKS—INFRINGEMENT.

   *Held, further*, that such claim was infringed by bank check-books made in accordance with the description and drawings in patent No. 191,436, for an "improvement in bank check-books."—[ED.

*Charles F. Blake*, for plaintiff.

*William H. King*, for defendant.

BLATCHFORD, C. J. This suit is brought on re-issued letters patent No. 8,199, granted to the plaintiff April 23, 1878, for an "improvement in pocket check-books;" the original patent No. 183,347 having been granted to James R. Osgood, as assignee, on the invention of said plaintiff, October 17, 1876. The specification of the re-issue, reading what is outside of brackets and what is inside of brackets, leaving out what is in italics, says: "Figure 1 represents a face view; Figure 2, perspective, showing manner of folding; Figure 3, face view of another mode of making my invention; Figure 4, perspective of same. Like letters indicate like parts in all the [drawings] *figures.* The object of my invention is to provide a pocket check-book which shall at once be convenient to carry in the pocket, and which shall at the same time be provided with suitable stubs having sufficient surface to enable the user to keep the record of his checks drawn, and of his deposits. Prior to my invention pocket check-books were made having the stub at the rear end of the check, from which the check was torn when used. Such check-books were found, in practice, to be too long to be carried in the pocket. Other check-books had the stubs extending all along the tops of the checks; but such books were too broad, and the stubs were of an inconvenient and unusual form. My invention avoids all of these difficulties, and consists in so constructing the check-book that it shall be not materially longer or broader than the check itself, while at the same time it provides stubs of the size and form used in ordinary office check-books. In my check-book, the stubs, AA, are of about the usual size, and are provided at their rear end with a lip or binding piece, *bb*, to bind them firmly into the back of the book. The checks, *cc*, are attached to them, not at their front, but at the top and bottom, at the line, *dd*, so that the stubs extend from the bound back nearly the whole length of the check, and between them. The two stubs are formed of one piece of paper, the second one following the first in the length of the book. They are of about the size of those in any

ordinary check-book, and afford the usual facilities for record-
ing the checks and for keeping a deposit account. The top
check is folded down over the face of the stub, and the bot-
tom check is folded up behind it, so that, when both checks
are folded in, they and their stubs are completely protected
by the cover. Any convenient number of these checks may
thus be bound up, and the book, when complete, is about the
length and breadth of an ordinary check, and remains of uni-
form shape as the checks are removed. Another mode of
practicing my invention is to take a piece of paper three
times the length of the desired check. This paper is then
divided by folding into three equal parts. The middle sec-
tion, *e*, [may be] *is* divided by [a line] *lines, ff*, into two stubs.
Over these stubs, and at their ends, the end divisions, *gg*, of
the paper are folded, which ends constitute two checks. The
paper thus folded has at its top a lip of paper, *h*, nearly as
long as the length of the two stubs or middle section, and of
sufficient width for binding purposes. These may be bound
together in convenient number, and constitute a check-book
of the size of an ordinary check." The re-issue contains two
claims, as follows: "(1) The combination, in a check-book, of
checks and stub pieces of substantially the same size, so
united that two checks lie between every two stub pieces,
substantially as specified and set forth. (2) A check-book in
which the checks are folded in upon the stub piece, which
lies between the checks, and which is alone attached to the
back of the book."

Taking what is above cited from the text of the specifica-
tion of the re-issue, and reading what is outside of brackets,
and what is in italics, and omitting what is inside of brack-
ets, we have the text of the specification of the original pat-
ent. The original patent had but one claim, which was in
the same words as claim 2 of the re-issue. The drawings in
the original and the re-issue are identical with each other.
It is plain that the descriptions in the two specifications are
the same, and that the only difference between the original
patent and the re-issue consists in adding in the re-issue
claim 1 therein. It is also plain that the drawings and

descriptions in the original show that the checks and the
stub pieces are of substantially the same size, and that two
checks lie between every two stub pieces, in both of the
modes set forth for practicing the plaintiff's invention.

It is not claimed that the defendant has infringed the sec-
ond claim of the re-issue, but it is alleged that he has in-
fringed the first claim of the re-issue.   The answer avers
that the defendant has made and sold bank check-books
under and by virtue of letters patent No. 191,436, granted to
him May 29, 1877, for an "improvement in bank check-
books," and that he believes such making and selling are the
acts of which the bill complains.   The plaintiff proves the
sale by the defendant of five check-books, one of which is
produced, and which, it is clear, is made according to the
description and drawings in patent No. 191,436.   According
to such description and drawings, and from the check-book
so produced, it is manifest that in the defendant's check-
book there is a combination of checks and stub pieces of sub-
stantially the same size, and that two checks lie between
every two stub pieces.   The defendant's check-book is com-
posed of a series of leaves, each printed on one side, to form
a blank bank-check, and of another series of leaves, each
printed on both sides, to form stub leaves on which to keep a
record of each check, and of bank deposits and bank bal-
ances.   Between every two stub leaves are two check leaves,
the check leaves and the stub leaves being of the same size,
bound together at the left hand, and each check-leaf perfo-
rated by a line of cross perforations near the place of confine-
ment at the left, to enable the check to be readily severed.
When the first check leaf at the right is filled out, the trans-
action is recorded on the adjoining face of the stub leaf
at the left of it; and when the next succeeding check leaf at
the right is filled out, the transaction is recorded on the
adjoining face of the stub leaf at the right of that check leaf.
Each face of a stub leaf has on it a place to record the par-
ticulars of the check belonging to it, and also by the side of
such place a place to keep an account of bank deposits and
of the bank balance, the former place being always nearer

the back binding than the latter place.   Thus each stub leaf is utilized on both sides, and for every two checks there is an additional piece of paper of the size of each of such checks, and the whole book is no larger in superficies than the size of the check, plus back margin enough to bind with.   The back of one check adjoins one face of the succeeding stub leaf, and the other face of that stub leaf adjoins the front face of the succeeding check, and the back of the next check adjoins one face of the stub leaf succeeding it, and so on. The checks not torn out, and the stub leaves, are thus always in position to be written on, inside of the dimensions of the book, without any movement at all of any check leaf, and without any movement of any stub leaf in any direction, except to the left or right, towards or from the place of binding, like turning the leaves of any ordinary bound book.   Following the description in the plaintiff's re-issued specification, the defendant's book is convenient to carry in the pocket, and is provided with suitable stubs having sufficient surface to enable the user to keep the record of his checks drawn, and of his deposits.   It is not materially longer or broader than the check itself.   It provides stubs of the size and form used in ordinary office check-books, each place on a stub leaf for recording the particulars of a check being of about the usual size in an ordinary check-book.   Each stub leaf can be bound at its left-hand margin.   The stub leaves extend to the right from the bound back the whole length of the checks, there being one stub leaf between every two checks and the next succeeding two checks, and two checks between every stub piece and the next succeeding stub piece.   The two places on a stub leaf for recording the particulars of checks are on one piece of paper.   The checks and stub leaves are completely protected by the cover; and the book is about the length and breadth of an ordinary check, and remains of uniform shape as the checks are removed.

The differences in construction between the book first described in the plaintiff's re-issued specification and the defendant's book are that in the defendant's book the two checks are not attached to their stub leaf, one at the top and one at

the bottom of such stub leaf, with perforations between the check and the stub leaf for detachment of the check; and the place of recording the particulars of the second one of every two checks is not on the same place of the stub leaf with the place for recording the particulars of the first one of such two checks, and the former does not follow the latter in the length of the book. In the plaintiff's book the mode of attaching two checks to a stub leaf makes necessary a fold between each check and its stub leaf, one fold up and one fold down, there being no attachment of the check to the book except through such attachment of it to the stub leaf. As two checks lie folded, so attached, the place for recording the particulars of each one of such two checks is on the adjoining face of the stub leaf at the left, there being two such places on that face, one at the left for one check and one at the right for the other check. On the other face of such stub leaf is printed a place for recording bank deposits and bank balances, there being nothing else on that face. Until both of any two checks are torn out, that face of the stub leaf succeeding them is inaccessible for use except by folding out from the dimensions of the book the superimposed check or checks. The plaintiff's specification does not state where the record of deposits is to be kept, except that it is to be on a part of the surface of the stub leaf, nor do the drawings show; but as the whole of the surface of one face of the stub leaf is described and shown as divided into two places for recording the particulars of two checks, and as there is one of such pieces for every two checks, and as nothing else is described or shown as occupying any part of the surface of the other face of the stub leaf, and as the description states that the stub leaves afford the usual facilities for recording the checks and for keeping a deposit account, it necessarily follows that the deposit account is to be kept on that face of the stub leaf on which the particulars of the checks are not recorded. Referring to the particulars before stated as existing in the defendant's book, the plaintiff's book is composed of a series of leaves, each printed on one side, to form a blank bank check; and another series of leaves, each printed on both sides, to form stub leaves on which to keep

a record of each check, and of bank deposits and bank balances. Between each two stub leaves are two check leaves, the check leaves and the stub leaves being of substantially the same size, the stub leaves bound together at the left hand; two check leaves being attached to each stub leaf, one at its top and one at its bottom, there being longitudinally, the whole length of each place of attachment, a line of perforations to enable the check to be readily severed. The two checks are folded into the dimensions of the book, the one down and the other up, at the two lines of perforations, bringing their faces uppermost; the check faces being printed on the same side with that face of the stub leaf on which the particulars of the checks are to be recorded. Where the first check leaf at the right is filled out, the transaction is recorded on the adjoining face of the stub leaf at the left of it; and where the next succeeding check leaf at the right is filled out, the transaction is recorded on the same face of that stub leaf. One face of each stub leaf has on it two places to record particulars of checks, and nothing else, and the place to keep an account of bank deposits and bank balances is either on that face of the stub leaf at the left of every two checks which has not on it the places for recording the particulars of checks, or on the next adjoining face of the stub leaf at the right of such two checks. Thus each stub leaf is utilized on both sides, and for every two checks there is one additional piece of paper, of substantially the same size as each of such checks, and the whole book is no longer in superficies than the size of the check, plus sufficient back margin on the stub leaves to bind with. The back of one check adjoins one face of the succeeding stub leaf, and the other face of that stub leaf adjoins the front face of the succeeding check, and the back of the next check adjoins one face of the stub leaf succeeding it, and so on. If the record of bank deposits and bank balances for any two checks is kept on the other face of the same stub leaf, on one face of which the particulars of said two checks are recorded, which is the obvious method, the checks not torn out, and the stub leaves, are always in position to be written on, inside of the dimensions of the book, without any

movement at all of any check leaf, and without any movement of any stub leaf in any direction, except to the left or right towards or from the place of binding, like turning the leaves of any ordinary bound book.

On the question of infringement the first question is as to the proper construction of the first claim of the plaintiff's re-issue. On this subject, as well as on the question of novelty, several alleged prior inventions are introduced. These are, English provisional specification for order books No. 2,918, filed December 21, 1858, by Nicholas Dawson; English provisional specification for arranging manifold letter books No. 1,992, filed September 1, 1859, by James Brine; English provisional specification No. 1,109, for counterslip note-book, filed May 3, 1864, by Bradly and Fielding; United States patent No. 170,686, granted December 7, 1875, to Ben. Morse, for "an improvement in tickets;" United States patent No. 171,429, granted December 21, 1875, to John M. Savin, for "an improvement in tickets;" and the structures represented by Exhibits C and D, testified to by Joseph H. Mann. Savin's patent need not be considered, as the application for the plaintiff's original patent was filed May 6, 1875, and that for Savin's patent was filed November 4, 1875. In no one of the other prior structures referred to is there shown any check-book in which two checks were interposed between every two stub leaves or record sheets, or in which the check and stub leaves were of substantially the same size, or in which there were two checks between every two stub leaves, or only one stub leaf for every two checks, or less than one stub leaf for every check. These are distinguishing features of the plaintiff's book and of the defendant's book. Dawson's specification shows alternate leaves perforated to be detached, and alternate leaves bound to remain, leaf for leaf; the leaves to remain being used for copies of matter written on the detachable leaves, either by making the detachable leaves of metallized paper, or interposing, while writing, carbonized paper between the two leaves. Brine's specification shows alternate leaves of prepared copying paper and of ordinary writing paper, the latter being perfo-

rated to be detachable, and the former bound to remain; the act of writing on the copying paper, with a sheet of carbonized paper put between it and the ordinary paper, causing a copy of what is thus written to be made on the ordinary paper. The specification of Bradly and Fielding shows a leaf with a printed bill-head perforated at the left, close to the binding, and next a perforated leaf a short distance from the binding, so as to leave, when torn out, a stub or counterslip between the perforation and the binding. A piece of black paper is interposed between the first and second leaves, and the first is written on, making a copy on the second, and a memorandum is made on the stub, and the two leaves are detached. In regard to the Morse specification, it is sufficient to say that the leaves in it are not shown as necessarily of substantially the same length, and there is only one ticket between any two record sheets.

In Exhibit C of claim, the stub leaf is only one-half the length of the check, and there is but one stub leaf for each check. A book made of them, whether partially used or not, showed stub leaves of not substantially the same length as the check leaves. Exhibit D shows nothing different from Exhibit C.

It was not new at the date of the plaintiff's invention, as shown by the foregoing matters, to make books containing leaves, which, when filled up, were to be detached, and other leaves for recording the contents of the first leaves, which other leaves were to remain in the books. Nor was it new at that date to make such books not larger, substantially, in either direction than the size of the leaves to be detached, and with the leaves to remain as large in size as the leaves to be detached. Nor was it new to make check-books with stub leaves, one stub leaf interposed between two checks, and one check between two stub leaves, and the book no larger substantially than the check. But these things do not meet the first claim of the plaintiff's re-issue, nor do they meet the features found in the defendant's book which enter into said first claim, as those features are hereinbefore set forth.

It is suggested on the part of the defendant that the first

claim of the plaintiff's re-issue is identical with the second, for the reason that the word "combination," and the words, "so united," in the first claim, can have reference solely to the mode described in the specification of uniting the two checks and the stub leaf by making them in one piece, and folding the checks in on the stub leaf in the center, the stub leaf alone being attached to the back of the book. This view is not tenable. The only object of any union between the check leaves and the stub leaves is to retain the check leaves as integral parts of the book until they are detached. Until such detachment the combination and the union exist. Such union and combination in both the plaintiff's book and the defendant's book take place at the perforated lines; and it makes no difference whether the perforation between the check and the stub leaf is at the top or bottom of the stub leaf, or at the left end of the check. In either case the characteristic features of the plaintiff's book, embodied in the first claim of the re-issue, result in view of the state of the art before set forth. If the defendant's book had been described and shown in a patent granted to him when the plaintiff's original patent was granted, and if afterwards the plaintiff's book had appeared, the latter would, in view of the state of the art before set forth, have infringed a claim in that patent, worded as is the first claim in the plaintiff's re-issue. Under the foregoing views as to the proper construction of the first claim of the plaintiff's re-issue, it does not relieve the defendant from infringement that in his book the checks are not printed on the same sheet with the stub leaf, and are not folded over at the perforations, and that the top and bottom of the stub leaves are not attached to the checks.

It results from the foregoing views that the charge of infringement is made out, and that neither what is claimed in the first claim of the plaintiff's re-issue, nor what is found in the defendant's book as infringing that claim, is shown to have existed prior to the plaintiff's invention.

The answer sets up as a defence that the specification and claim of the plaintiff's re-issue cover a larger improvement

than was previously included in his original patent. If this means only that the claim of the re-issue is broader than the claim of the original, it amounts to nothing. If it means, in the language of the statute, that the re-issue is not "for the same invention," as those words are interpreted, the defence cannot prevail.

No other defence set up in the answer is proved. No defence of abandonment is set up. All the views presented on the [part of the defendant have been considered, and there must be a decree for the plaintiff for an account of profits, and an ascertainment of damages and a perpetual injunction, with costs.