JOHNSON et al. v. JOHNSTON.

(Circuit Court, W. D. Pennsylvania.   February 15, 1894.)

No. 14.

1. PATENTABLE DEVICE—GENERAL INDEX.

Letters patent No. 461,787, granted October 20, 1891, to Montgomery H. Watson, for an improvement in general indexes to be used in connection with books, in which are recorded the names of individuals and facts or transactions connected therewith, are for a patentable subject-matter; the device covered being within the term "manufacture," as used in the patent laws.

2. INVENTION—CAMPBELL AND WATSON INDEXES.

Letters patent No. 461,787 were granted to Montgomery H. Watson on October 20, 1891, for an improvement in general indexes in connection with books, in which were recorded the names of individuals and facts or transactions related thereto.   The Campbell index, in general use before this patent, consisted of a blank book or books having as many divisions as there are letters of the alphabet, each devoted to surnames having the corresponding initial letter, while on a fly leaf, at the front or back of the book, are the letters of the alphabet, in a

horizontal line, representing the initials of Christian names, under which are placed figures referring to the pages on which those names are found. In the Watson patent, this table showing the initials of Christian names, and the pages on which they are to be found, is placed at the top of each page of the index, whose arrangement as to surnames is substantially the same as that of Campbell's index. The effect of this improvement is to make each page, practically, a complete index, and to avoid the wear and tear and the loss of time involved in turning constantly to the fly leaf, as it is necessary to do both in making and in searching the Campbell index. *Held,* that the Watson improvement involves invention, and the patent is valid.

In Equity. On final hearing. Bill by Johnson & Watson against William G. Johnston for infringement of a patent. Decree for complainants.

H. A. Toulmin, for complainants.
W. Bakewell & Sons, for defendant.

ACHESON, Circuit Judge. The plaintiffs sue for the infringement of letters patent No. 461,787, dated October 20, 1891, granted to Montgomery H. Watson, for an improvement in general indexes. The patented index is designed for use in connection with books in which are recorded the names of individuals, and facts and transactions; for example, entries in the order book or appearance docket of a court, or the record of deeds or mortgages in the books of a recorder. The specification states that, in making up a complete set of index books for sale and use, each index volume is designated by a letter of the alphabet, all surnames commencing with that particular letter being written in that volume. Each page is headed with such designations as relate to the particular uses of the index, and is ruled to agree with such uses. Across each page of the index volume—preferably, near the top— is a table composed of the letters of the alphabet, progressively arranged, which stand for the initials of the Christian names of all persons whose names are written in the columns of that volume, and a figure or figures, associated with each of said initial letters, referring to the numbers on the page or pages of the volume. By the use of the index of Christian-name initials and associated numbers, the name of any particular person can be found in the index volume, and opposite this name will be found the volume and page of the record book containing the matter sought for. No matter at what page of the index volume the searcher may open it, he will there find a ready and accurate reference to the particular page on which will be found the name for which he is searching. Indeed, every page is a complete index. The claims of the patent are:

"(1) As a new article of manufacture, an index book or volume consisting of numbered pages suitably ruled, headed, and numbered, and of a table composed of the letters of the alphabet appearing on said pages, such letters representing the initials of Christian names, and a figure or figures associated with each of said initial letters, and corresponding with a page or pages in said book, the book being designated by a letter of the alphabet. (2) As a new article of manufacture, the herein described index book or volume, the same being designated by a letter of the alphabet, and consisting of a suitable number of pages consecutively numbered, one or more pages of such

book being devoted to Christian names commencing with a certain letter of the alphabet, and each page being suitably headed and ruled, and a. table on each page, consisting of the letters of the alphabet progressively arranged, and a figure or figures corresponding with a page or pages of said book."

Infringement is clearly shown. · In truth, the index books which the defendant made for and sold to the county of Allegheny, Pa., for use in the prothonotary's office, (the act of infringement here complained of,) are identical with the index of the patent. Two defenses have been urged: First, that the patent in suit is not for a patentable subject-matter; second, that the patent lacks invention, especially in view of the prior state of the art.

1. The term "manufacture," as used in the patent law, has a very comprehensive sense, embracing whatever is made by the art or industry of man, not being a machine, a composition of matter, or a design. Curt. Pat. § 27; 1 Rob. Pat. § 183. In Waring v. Johnson, 6 Fed. 500, letters patent for an improvement in pocket check books were sustained by Judge Blatchford; and in Norrington v. Bank, 25 Fed. 199, Judge Colt sustained a patent whose subject-matter was of a like nature. In Dugan v. Gregg, 48 Fed. 227, a combined book and index, so connected as to facilitate the more ready and convenient handling thereof, was held to be a patentable improvement by Judge Coxe, who, also, in Carter & Co. v. Wollschlaeger, 53 Fed. 573, upheld a patent for an improvement in duplicate memorandum sales slips, following a decision of Judge Colt in Carter & Co. v. Houghton, 53 Fed. 577, sustaining the same patent. In Thomson v. Bank, 3 C. C. A. 518, 53 Fed. 250, the United States circuit court of appeals for the eighth circuit sustained a patent for a bank account book, the improvement consisting in a suitable number of full leaves and alternate series of short leaves, each of the latter being creased or perforated for folding in such a manner as to transfer the column of balances on the right-hand page to the succeeding left-hand page. I have no difficulty in holding that the subject-matter of the patent in suit is patentable.

2. Does the improvement in general indexes devised by Watson involve invention? Here, I think, is the pinch of the case. As anticipating Watson's improvement, or, at least, as depriving it of the quality of invention, the defendant particularly relies upon the Campbell index, which, it is shown, has been used for many years in Allegheny county. It consists of a blank book with as many divisions as there are letters in the alphabet, devoted, respectively, to surnames having corresponding initial letters, while on a fly leaf in the front or at the back of the book are the letters of the alphabet, in a horizontal line, representing the initials of the Christian names, under which are placed figures referring to the pages of the book where the names are to be found. Now, at first view, this earlier index might seem to be decisive against the plaintiffs. It is, however, shown that, in actual practice, the Campbell index was found to be subject to serious objections; so much so that, whereas the commissioners of Allegheny county paid $4,000 for the right to use the Campbell index, yet, in furnishing indexes for

a recently organized additional court of common pleas, they procured from the defendant indexes made in accordance with the patent in suit. The reasons for this change, disclosed by the evidence, are suggestive. As the index table in the Campbell system is at the front or back of the book, it is necessary for the clerk who writes the names in the volume to turn back and forth from the body of the book to the index table, and for the searcher using the volume to manipulate it in like manner; thus involving much loss of time, constant and great wear and tear of the book, and also liability to mistakes on the part of both clerk and searcher. The evidence is convincing that these evils were experienced. John Bradley, the prothonotary of Allegheny county, speaking of the Campbell index, testifies: "The constant turning to the index in the book defaced and mutilated the book, by finger marks, and sometimes tearing the index itself." Referring to the Watson index, he states: "We have a system now that is a great saving of time; in that respect, much better than the Campbell. * * * The system now in use is a great saver of time, and, in a county like this, that is very desirable. I mean, as compared with the system known as the 'Campbell.'" In answer to the question whether the wear and tear incident to the Campbell index occurred in the use of the Watson index, he says: "They do not, because, anywhere you open the book, you find the full index before you." This feature is the peculiar characteristic and crowning excellency of the index of the patent. The conception was novel and felicitous. Each page is itself a complete index, at once presenting to the eye a full and unerring reference to every other page of the book. All the objections to the Campbell index are thereby obviated. The proofs of general acquiescence in the claims of the patent, and of public approbation of the system of indexing it has introduced, are unusually strong. In many places the Watson index, altogether upon its intrinsic merits, has superseded the Campbell index. It has been adopted by public authorities after competitive examination, and in some instances upon the recommendation of committees of the bar appointed by the courts to consider the subject of the most approved method of keeping indexes to the public records. These facts greatly strengthen the presumption of patentable novelty arising from the grant of the patent. The reasons assigned by the judges in the several above-cited cases for sustaining the patents there involved as evincing invention, for the most part, apply to the case in hand. The views of the circuit court of appeals in Thomson v. Bank, supra, are especially pertinent. Here, as there, the evils which the patent in suit remedied had been apparent for years, yet no keeper of public records, experienced clerk employed to make entries therein, or user of the indexes thereto, had suggested what Watson has accomplished. The improvement was by no means an obvious one. Hence the decision in Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717, is not here applicable. Indeed, Watson has supplied a great desideratum. He has provided for the public an index which is almost, if not altogether, perfect. His work is a distinct and substantial ad-

vance upon everything which preceded it. Why, then, should the faculty of invention be denied to him? The decisions of the supreme court in Loom Co. v. Higgins, 105 U. S. 580, 591; Magowan v. Packing Co., 141 U. S. 332, 12 Sup. Ct. 71; The Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450; and Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719,—furnish the amplest warrant for upholding the patent in suit. Let a decree be drawn in favor of the plaintiffs.