## BERARDINI v. TOCCI.

(Circuit Court, S. D. New York. July 3, 1911.)

1. PATENTS (§ 328*)—SUBJECTS OF PATENTS—ARTS—SYSTEM OF CODE MESSAGES.

The Berardini patent, No. 889,094, for a "code message," but which is really for a system of devising code messages, is not for an art in the sense of the patent law, and is void. Claims 7 and 8, which are for a record book for use in drafting and deciphering code messages, are also void for lack of invention.

2. PATENTS (§ 328*)—INFRINGEMENT—CODE MESSAGE.

The Berardini patent, No. 889,095,, for a code message, *held* not infringed.

In Equity. Suit by Michael Berardini against Felice Tocci. On final hearing. Decree for defendant.

Action upon letters patent issued to complainant and numbered 889,094 and 889,095. All the testimony in the case was adduced in open court.

Mr. Von Briesen, for complainant.

Mr. Hardie, for defendant.

HOUGH, District Judge. [1] The first patent, 889,094, is described as "for a code message." Its history is this: Complainant is a banker of this city, dealing principally, if not wholly, with his fellow countrymen, who often wish to transmit comparatively small

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sums of money to Italy and do it quickly. He keeps a list of his customers in appropriate books. On a line of a given book is to be found the name of the person who may wish to remit money, the name of the person to whom he so remits it, and the address of the payee. This line is numbered, and duplicate books are kept in the United States and in Italy. Thus it is seen that each line of the book enables any one having access thereto and being furnished with a given number to identify by that number the remitter and the payee, with the latter's address.

Complainant made known to his Italian customers that he would transmit money by telegraph in any sum which was a multiple of 10. If, therefore, any person whose name was inscribed in complainant's book, and also in that of complainant's correspondent in Italy, wished to transmit 100 lire to the individual in Italy whose name and address were also to be found in both books, a code message reading "12584" would produce that result; "1" being the number of hundreds of lire to be transmitted and paid, and "2584" being the record number on both sides of the Atlantic of remitter, payee, and payee's address. Five figures being the limit of transmission at one-word rate by trans-atlantic cable, the system as above explained is only valid for record numbers from 1 to 9999, and also only for hundreds of lire. Within these limits many scores of remittances might be made in a single cable message, and by the prefixing of a word arbitrarily agreed upon it might be stated that the first figure stood, not for hundreds of lire, but for thousands or for tens. If all the figures necessary to convey the meaning did not amount to five, prefatory ciphers would be filled in, so that every given message would consist of a series of blocks of five figures each, all to be read in the manner above sufficiently described. This obviously exposed the Italian correspondence charged with paying the orders, to many risks from errors in cable transmission, and complainant therefore added to his figures in blocks of five a statement in uncoded language of the number of remittances intended to be covered, the total value of the remittances in money, and the sum total of the cipher numbers used to indicate remitter, payee, and address.

It is obvious that this is really a system of telegraphic remittance, and it is this system which is described in the specification of the patent, with many amplifications and variations; e. g., for the use of the system when the record numbers extend to and beyond 10,000, and for the use of letters instead of figures by an arbitrary pre-arranged equivalence between figures and letters. Yet the claims of the patent from 1 to 6 are not for a system nor method of telegraphic communication, but are in language best illustrated by claim 4, which is as follows:

A code message comprising a series of elements, the number of which is a multiple of the number of elements constituting a code unit, each code unit consisting of two portions, one of which indicates the value or amount of the order, while the other is a record mark identifying the parties to the transaction, the message also including means indicating the value of the elements representing the amounts of the orders."

Claims 7 and 8 are each for a "record book for use in drafting and deciphering code messages," and containing the information above sufficiently set forth.

It must be obvious, from the description of the system above given, that it would be (humanly speaking) impossible to so distribute error in telegraphic transmission as to permit the receiver of the message intended to direct the payment of (say) 20 different sums to 20 different people to think the message correct when it was really incorrect, after he had tested it by the additional information as to the number of payments intended, the total of such payments, and the total of the arbitrary key numbers. Yet while the receiver might detect error, he could not locate it, and it would be necessary to ask (perhaps) for several repetitions of the message until accuracy had been reached.

To this point the second patent (889,095) is directed. This invention consists in the application of an old (though perhaps not very well known) arithmetical curiosity to the business of sending figures by telegraph.

The patentee learned that, if any number of numerals arranged in columns as for addition be added, each horizontal line and each perpendicular column separately, the grand total obtained by the horizontal addition of the digits will be the same as the grand total of the perpendicular addition of digits.

Therefore this patentee proposes that the transmitter of the message arrange his figures in blocks of five as for addition, and, having added the digits used both horizontally and perpendicularly, he should then add to a cable sent according to the system of the earlier patent a line of figures containing the totals of the digital horizontal and perpendicular addition above described. Assuming this last transmission to be correct, experiment will show that certainly one, and possibly two or three, errors in transmission of the original blocks of five numerals can be detected, and correction made without repetition of the cable. Therefore complainant claims as his invention (taking the first claim as an examplar):

"A code message comprising a number of code units each consisting of a number of elements having a numerical significance and test totals indicating the proper results of the addition of said elements upon the arrangement of said units in columns and rows."

The foregoing is thought to be a fair summary of complainant's addition to the sum of human knowledge as revealed by these patents.

As to claims 7 and 8 of the earlier patent, it is sufficient to say that they are overwhelmingly shown to embody a system of assigning arbitrary meanings to words and figures which is very old in cable code systems. They are therefore void for lack of invention.

[2] As to the second patent, it is enough for the purposes of this case to point out that, whatever may be the merits of digital addition of code numbers as a means of detecting errors in the transmission of the same, there is no proof that defendant ever used that method, and therefore the bill as to the second patent must be dismissed.

The evidence reveals that for a very short time defendant, who is also a banker transacting the same kind of business as complainant,

did use for the same purpose as does the complainant a system of telegraphic transmission of money which involved the use of arbitrary words and figures in substantially the same way as complainant used them, and he did add statements of the number of payments ordered, totals of such payments, and totals of key numbers. With slight variations there was a time for a few weeks, shortly before the beginning of this suit, when the practical method of transmitting money to Italy used by both parties hereto was the same.

It would, I think, be quite possible, if the earlier patent were for a combination of elements producing a new result, to show, first, that the elements were not new, and that the result was not new; but the patent must be judged according to its wording, and claims 1 to 6 thereof are not for any "composition of matters," nor a manufacture, nor a machine, but they are for (eo nomine) a "code message," and it necessarily follows that a code message must be an art within the meaning of Rev. St. § 4886, as amended by Act March 3, 1897, c. 391, § 1, 29 Stat. 692 (U. S. Comp. St. 1901, p. 3382).

It might be enough to bluntly hold that a code message cannot be an art, but that perhaps is interpreting the mere language of the claims too narrowly. It is therefore thought better to inquire what is an "art" within the meaning of the patent laws.

"In the sense of the patent law an art is not a mere abstraction. A system of transacting business, disconnected from the means for carrying out the system, is not, within the most liberal interpretation of the term, an art. Advice is not patentable." Hotel Security, etc., Co. v. Lorraine Co., 160 Fed. 469, 87 C. C. A. 451, 453, 24 L. R. A. (N. S.) 665.

A patent will not be "held valid for a principle, or for an idea, or any other mere abstraction." Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103.

Speaking of a patent which resulted in famous litigation, Shepley, J., said:

"It must be sustained, if it be sustained, as a patent for an art. The statute term 'art,' used as it is in the sense of the employment of means to a desired end or the adaptation of powers in the natural world to the uses of life, is perhaps a better term than the word 'method' used by the patentee, or the word 'process,' the term of description used by the experts. A process eo nomine is not made the subject of a patent in the act of Congress; an art may require one or more processes or machines in order to produce a certain result or manufacture. It is for the discovery or invention of some practical method or means of producing an essential result or effect that a patent, is granted, not for the result or effect itself. 'Process' or 'method,' when used to represent the means of producing a beneficial result, are in law synonymous with 'art,' provided the means are not effected by mechanism or mechanical combination." Piper v. Brown, 4 Fish, Pat. Cas. 175, Fed. Cas. No. 11,180.[1]

If, therefore, this patent be construed as not merely for a thing called a "code message," but for a system of transmitting code messages, for a process or method of cable communication in cipher, the

---

[1] Note.—The patent that was involved in this case was also tested in Piper v. Moon, 10 Blatchf. 264, Fed. Cas. No. 11,182. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 196, the decision of Shepley, J., was reversed, but without affecting the importance of the above-quoted discussion of the meaning of the statutory word "art."

question arises whether such a process or such an art is patentable upon the evidence. Numerous cases have been cited relating to patents for index books, checks, and check books, and certain arrangements of printing upon books of account. Johnson v. Johnston (C. C.) 60 Fed. 618; Carter Crume Co. v. American Salesbook Co. (C. C.) 124 Fed. 903; Thomson v. Citizens' Bank, 53 Fed. 250, 3 C. C. A. 518; Waring v. Johnson (C. C.) 6 Fed. 500; Dugan v. Gregg (C. C.) 48 Fed. 227; Safeguard Acct. Co. v. Wellington (C. C.) 86 Fed. 146. Upon examination each of these cases holds no more than a particular book, pamphlet, or sheet of paper treated to a particular style of printing, or arranged in a particular manner, could be patented as an article of manufacture, which is as much as to say that the paper, ink, and perhaps binding, when arranged as a composition of matter, became patentable by the presence of utility, novelty, and invention.

Such is not and cannot be the case here. No particular code message can be produced which in every exemplar thereof is the single subject of this patent. Indeed, the claims are misnomers. The patent is not intended to be for a code message, in the sense that patents have been granted for books of a peculiar kind. The patent is really for a system of devising code messages, and as such (upon a most liberal reading of the claims) it is in my judgment obnoxious to the remarks above quoted from Hotel Security Co. v. Lorraine Co. The patent is really for advice. It is for an art only in the sense that one speaks of the art of painting, or the art of curving the thrown baseball. Such arts, however ingenious, difficult, or amusing, are not patentable within any statute of the United States.

The bill is dismissed, with costs.