COHN, RISSMAN & CO. v. HICKEY-FREEMAN CO.

(District Court, W. D. New York.    July 2, 1917.)

No. 140-B.

1. PATENTS ⬤⟿328—VALIDITY—ANTICIPATION.

Cohn and Weiner patent, No. 1,121,581, for an improved process for cutting and fitting wearing apparel, consisting of cutting and working and seaming together two pieces of striped or patterned cloth, keeping the stripes or patterns in parallelism with the seam line so that they will follow longitudinally the curves of the body to be fitted, held invalid for want of novelty.

2. PATENTS ⬤⟿7—VALIDITY—NOVELTY—"PATENTABILITY."

The patent law does not require that an article itself produced by a process should be new, since "patentability" exists in a new process for producing an old result.

[Ed. Note.—For other definitions, see Words and Phrases, Patentability.]

3. PATENTS ⬤⟿7—"INVENTION"—WHAT CONSTITUTES.

It is not invention for a patentee to merely carry forward an old process, describing it in new terms and adapted equivalent modes under conditions recognized as possible within the knowledge of any mechanic.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. PATENTS ⟨key⟩49—VALIDITY—UTILITY.**

Where demand for clothing made according to complainant's patented process resulted from extensive advertising, such demand does not show utility or invention.

In Equity. Bill by Cohn, Rissman & Co. against the Hickey-Freeman Company. Bill dismissed.

George S. Pines and Arthur H. Boettcher, both of Chicago, Ill., for plaintiff.

Church & Rich, of Rochester, N. Y. (Wile, Oviatt & Gilman, of Rochester, N. Y., of counsel), for defendant.

HAZEL, District Judge. The specification of the Cohn and Weiner patent, No. 1,121,581, dated December 15, 1914, for an improved process for cutting and fitting wearing apparel, states that the process consists of cutting and working and seaming together two pieces of striped or patterned cloth, keeping the stripes or patterns in parallelism with the seam line so that they will follow longitudinally the curves of the body to be fitted. According to the patentees, in making fitted coats it was customary to cut the inner edges of the back halves curved, with the result that in striped or patterned material the back seam was intersected with lines forming darts, which gave to the coat a crude appearance. They therefore proposed to parallel the stripes or patterns with the back seam: (1) By cutting the material for the back halves straight at the inner edges and parallel with the pattern; (2) by shrinking at the armpits to form shoulder blade·pockets; (3) by drawing in or shrinking adjacent the armholes to further throw outwardly the upper portion of the cloth above the armpit line; and (4) to draw the material outwardly just above the waist by stretching along the outer edge at the waist line, and then to shrink out the resulting wrinkles or puckering of the cloth. The specification also states that after completing the second and third steps just specified the inner edge of the back half "will have the proper curvature, but the cloth above the vent line will have to be thrown back to give the proper angular position to this edge." The defenses are, invalidity, prior use, and noninfringement.

[1-3] Plaintiff concedes at the outset that matched back form-fitting coats were not novel in the custom tailoring art, but contends that in the ready to wear industry only form-fitting coats of the mismatched kind—those having converging longitudinal stripes or patterns—were in the market at the date of the invention, and that its method of making coats, though not limited to ready to wear coats, was new and novel and resulted in a better appearing garment.

The primal questions are whether the combination, including as an essential element the shrinking of the cloth at predetermined sections adjacent the armholes in order to curve the center seam, after drawing in the cloth or a section at the outside of the half below the armpits for making a hollow for the shoulder bade, was a new combination, and whether a new result was attained thereby. The claims disclose the process, while the specification points out the feature which the patentees contend differentiates their process from prior processes

of custom tailors, reference being made to the drawings. The involved claims read as follows:

"1. The herein described process of cutting and fitting from striped or patterned cloth the two halves of a coat back, which consists in first cutting each half above the vent line along a straight line parallel with the stripes or pattern line, then shrinking the cloth at *predetermined* sections adjacent the outer edge *to curve the upper part* of the *piece outwardly* to the desired seam curvature, then stretching a section adjacent the outer edge to throw the part above the vent line inwardly to get the desired angle of the seam edge with reference to the part below the vent line, and then sewing the *curved edges* of the halves together.

"2. The improved process of cutting and shaping patterned cloth to form the back half of a garment which consists in first cutting a piece with the inner seam edge straight and parallel with the pattern lines and the upper and outer edge in accordance with the neck, shoulders, arm, and waist, then drawing in a section of the cloth adjacent the outer edge below the armpit by shrinking the material *to throw the part above the armpit outwardly to effect curvature of the seam edge*, then drawing in the section adjacent the armhole by shrinking the material *to further throw out the part above the armpit line and to bring the seam edge to the desired curvature*, then stretching the section adjacent the outer edge at the waist to throw the part above the section inwardly, then taking in and smoothing out by shrinking the wrinkles caused along the seam edge by such stretching."

The novel elements said to be embodied in the claims I have italicized. If the contentions of the plaintiff are sound and such claims are valid, a practical domination by the plaintiff of the production by wholesale tailors of form-fitting matched back coats now extensively worn by men and boys will result. Therefore the evidence pro and con has been carefully considered and the conclusion has been reached that the process under consideration does not disclose any patentable difference over the prior process practiced by custom tailors for a number of years before the patent in suit in matching backs in form-fitting coats, and in my opinion such prior process was adaptable to the ready to wear industry. Even though the patentees were the first to adapt their specific method to form-fitting coats or striped or patterned material, only such slight changes or modifications were involved as would occur to the ordinarily skilled tailor, and did not call for invention. It is true that the patent law does not require that an article itself produced by a process should be new, since patentability exists in a new process for producing an old result. 30 Cyc. 823. But the mode of operation in question in a strict legal sense was not novel or new.

Generally to manipulate two pieces of cloth by stretching and shrinking at different points, to wit, the shoulder, the neck, and the inner and outer edges of the seam at the waist line to produce a form-fitting garment, was an expedient as old as the tailoring art; and it is not believed to have been difficult, at the time of the conception in suit, to produce by known steps a form-fitting coat of striped material in which the stripes ran parallel and did not converge at the back seam. In some of the ready to wear coats of striped material the lines, as heretofore stated, intersected the back center seam, but that was due, I think, to haste, ignorance, and carelessness on the part of those making ready to wear garments, and not to lack of knowledge by all

tailors as to how to make a form-fitting matched back coat. The patentees' method of shrinking the cloth at certain sections near the armhole to throw the cloth outwardly for the shoulder blade and further shrinking to curve the inner edge were steps familiar to the art.

Plaintiff claims that prior to the time of the patent in suit tailors, in making form-fitting matched back coats, shrunk for blade hollow only, and not to curve the upper part of the back half, but in my mind the shrinking to obtain a blade pocket resulted in curving the back seam. The patentees merely carried forward an old process, describing it in new terms and adapting equivalent modes or steps "under conditions recognized as possible, within the knowledge of any mechanic, but not previously stated in language," but this was not invention. Berardini v. Tocci (C. C.) 190 Fed. 329. As said in Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647, by Mr. Justice Lamar in quoting from the opinion delivered by Mr. Justice Swayne in Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566:

"But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way, by substantially the same means, with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use."

A few references to the testimony in support of the views herein expressed will suffice. The witness Cohn substantially testified that in making form-fitting matched back coats he took a hollow-backed pattern and straightened up the back seam, cutting the material by the straightened pattern, that he then sewed the parts together and shrunk them until they conformed to the hollow-backed pattern. Pingitore swore that he had made a number of "whole back coats" and "two-piece back coats" of striped material; that he shrunk and stretched the material at the center, sides, and waist line, stretching the side seam and shrinking the center line to make it follow the curve of the spine.

Weiner testified that for the past 30 years he had, at various times, made matched back form-fitting coats by cutting the back seam straight and by stretching at the side seam and shrinking at the inner seam at the waist line and by shrinking at the armpit, that this was the method used, not only in custom tailoring, but also in ready to wear manufacture, and that the object was to get a curved seam, but to have the stripes run parallel with the seam. The witness Scott illustrated the manner in which the back halves of coats were treated (see Exhibits E and F), and while Exhibit F indicates a longitudinal stretching of the back and Exhibit E an all-shrinking method without any stretching, his testimony in its entirety indicates that shrinking around the armhole was a familiar step in forming the blade pocket and in obtaining rounded shoulders. In the American Tailor and Cutter, dated May, 1908, there is described a method for cutting striped flannel in such a way as to parallel the lines in the center of the back. The article states that the pattern was cut with a straight center seam especially for striped goods, and that the back was stretch-

ed at the side seams and shrunk at the center seam to avoid bulging out at the waist and to impart a medium fit, and Haglund testified that he did not refer in the article to shrinking around the armhole, as that was required in all coats irrespective of the material.

Other credible witnesses have sworn that they have, for many years, practiced the principal steps described in the patent in suit in making form-fitting coats of striped or patterned material, although not specifically claiming that they shrink at the armhole to curve the inner edge of the back half. The witness Longo, however, on cross-examination said that shrinking at the armhole to make a blade pocket swung over the back half of the center seam. The witness Haglund, giving similar testimony, referred to a paper pattern (Exhibit. 35), showing a straight inner seam and the effect thereon of shrinking and stretching at various points to curve the center seam at the upper part as well as at the waist line.

[4] Defendant also contended, and evidence is given in support thereof, that the use of a center seam in a coat of striped or patterned material was a matter of preference, largely governed by fashion, as was also the matter of a back with parallel or intersecting lines; but, in my opinion, mismatched back ready to wear coats first appeared upon the market, not so much in response to fashion, as because they were more easily and less expensively manufactured than the matched back garments. The demand arising for matched back form-fitting garments was, it is believed, due in a great measure to plaintiff's method of advertising by attractively contrasting such garments with mismatched back coats. Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, 13 Sup. Ct. 850, 37 L. Ed. 707. Other contentions relating to the invalidity of the patent in question or the insufficiency of defendant's proofs to establish prior use need not be discussed, as in my opinion such prior use has been satisfactorily shown, and the patent in suit is therefore held invalid for want of novelty.

A decree may be entered dismissing the bill, with costs.