### In re MALCOLM.
### Patent Appeal No. 2941.

Court of Customs and Patent Appeals.
April 4, 1932.

Barnett & Truman, of Chicago, Ill. (Otto R. Barnett and Percival H. Truman, both of Chicago, Ill., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

For alleged lack of invention over the prior art cited, the tribunals of the United States Patent Office have concurred in rejecting the five claims of appellant's application for patent upon claimed improvements in music notation.

Claim 9 is selected by appellant as illustrative: "9. The herein described music notation sheet having thereon two pairs of staff lines, one for the treble and one for the bass, numerals 1 to 7 inclusive for designating the white key notes of each octave and consecutive letters designating the black key notes of each octave, arranged with the characters designating the notes of each octave in horizontal alignment with each other and with the characters designating notes of certain octaves larger than the characters designating notes of other octaves."

The foregoing claim seems to relate to the application of appellant's system of writing that music which is to be used in the playing of a piano or like instrument. The other appealed claims differ from it in scope, or in providing a single pair of staff lines for music to be used in playing other instruments.

Originally appellant's application was rejected by an examiner on the ground that musical notation as printed matter does not come within the statutory subjects of invention. Upon appeal, the Board of Appeals, having reviewed a number of court decisions, found that in several cases the courts had indicated doubt as to the patentability of printed matter, but had stopped short of holding it nonpatentable per se and had decided the issues of those cases simply upon nonpatentability over prior art. In other cases such as Johnson et al. v. Johnston (C. C.) 60 F. 618; Rand, McNally & Co. v. Exchange Scrip-Book Co. (C. C. A.) 187 F. 984, and Benjamin Menu Card Co. v. Rand, McNally & Co. et al. (C. C.) 210 F. 285, it was expressly held that the types of printed matter therein involved were patentable. The fact was also noted that some of the references cited in the instant case were patents of printed musical notation plans or systems.

Accordingly, the Board of Appeals reversed the decision of the examiner based upon nonpatentability of subject-matter.

Thereupon appellant amended his application by introducing some new claims, and the entire case was reopened before the examiner.

The rejection of the new claims and also all the old claims by the examiner, as not being inventive over cited prior art, followed, and, this second decision being affirmed by the Board of Appeals, the instant appeal to this court was taken.

The final decision of the Patent Office tribunals being limited to rejection upon prior art, the broad question of whether printed musical notations are patentable is not involved in the reasons of appeal, and so is not before us for determination. Consequently, we are limited to a consideration of the issue of anticipation.

The references cited are: Harrison, 1,383, October 26, 1839; Clements-Kropp, 429,841, June 10, 1890; Thirlwell (Br.), 13,459, of 1896; Heffernan (Br.), 15,561, of 1906; No. XVII, public letter of Mr. R. Patterson to Francis Hopkinson, dated March 7, 1788; "Public School Music," p. 485, published Chicago, February 1, 1899, filed Div. 53 under class 283—47.

The chart of appellant's system, applied to music to be played upon the conventional piano, as same is disclosed in his specification and drawings, may be described as follows:

The octaves are numbered from left to right with Roman numerals, octaves I to IV being to the left of middle C and Octaves V to VIII to the right thereof. The notes, which are to be sounded by the white keys of each octave, are represented by the Arabic numerals 1 to 7, inclusive, and those to be sounded by the black keys are represented by the capital letters, A to E, inclusive.

Two pairs of lines are used in creating a staff, the space between the second and third lines from the top (the center space) being relatively wider than that between the first and second and between the third and fourth lines, respectively. The numbers and letters designating the keys which are to be struck by the right hand are carried by the upper pair of lines; those that are to be struck with the left hand are carried by the lower pair. Three successive octaves are shown in letters and numerals of uniform size placed, respectively, below, between, and above each pair of lines, those uniform characters of the left hand clef beginning with octave III and ending with octave V and those of the right hand clef beginning with octave IV and ending with octave VI. The remaining octaves are shown either by different sized type or different shading of the type, or both. The arrangement of the key numerals and letters with reference to the lines and the varying sizes or shades is for distinguishing the notes in the different octaves.

The Harrison patent apparently relates to vocal music or to music for such instruments as require only the treble clef (the kind which appellant's claims 8 and 11 seem to contemplate), and Harrison's description indicates only one pair of parallel lines for the staff, but states: "When necessary I add two additional lines. * * . * " Harrison discloses the indication by numerals 1 to 7 of the seven primary tones. The octaves are indicated by placing the numerals below, between, and above the lines, as in appellant's system.

The patent to Thirlwell shows two pairs of horizontal lines for the treble staff and bass staff, respectively. The white keys are indicated by numerals printed in one style and the black keys by numerals printed in another style, and also different colors are used for the numerals which color arrangement limits to 10 numerals the number required to represent each of all the keyboard notes.

In the Clements-Kropp patent characters are used which by their dimensions indicate the time values.

Heffernan shows two pairs of horizontal lines for treble and bass staffs, respectively. The notes are indicated by numerals.

The Patterson letter discloses the use of letters of different styles to indicate notes, and the "Public School Music" reference employs numerals to indicate notes with dots to indicate the octaves.

Appellant insists that by his system a new combination has been created which simplifies musical notations, reduces the mental effort required in learning to play musical instruments, and renders musical education simpler and less difficult of attainment.

It seems perfectly obvious that each of the elements used in appellant's system is to be found in some one of the systems shown in the prior art cited.

The designation of musical notes by numerals and letters is shown. It is true that they are not shown in the combination which appellant utilizes, but one combination does show the white keys and the black keys distinguished by numeral types. It scarcely seems to have required invention to substitute the letters taught by Patterson to indicate notes for the black key numerals taught by Thirlwell.

The four lines, or two pair lines, staff arrangement is shown (not in the same dimensions, perhaps, but the claims say nothing of dimension, even if that were a patentable distinction), and Harrison distinctly teaches an arrangement of characters precisely like that of appellant, with reference to the lines, so as to show different octaves. Also the feature of size in characters used to indicate certain musical terms or phases is shown.

Furthermore, each of the elements constituting appellant's combination appears to have been designed to function in the prior art substantially as it functions in the system of appellant.

Under this state of facts we are unable to find patentable invention, as defined by the statutes, in appellant's arrangement, ingenious and valuable though it may be.

The rule as to measuring an achievement in this art by the test of skill applies, so far as patentability is concerned, the same as in all other arts, and the court must here, as elsewhere, distinguish between invention and mere skill in workmanship.

Appellant's cited authorities have been carefully examined in the light of the facts of the case. These facts distinguish this case from those upon which appellant relies.

The decision of the Board of Appeals is affirmed.

Affirmed.

