### CINCINNATI TRACTION CO. v. POPE.

#### (Circuit Court of Appeals, Sixth Circuit. October 17, 1913.)

#### No. 2,306.

1. PATENTS (§ 13*)—SUBJECTS OF PATENTS—"MANUFACTURE"—STREET RAILROAD TRANSFER TICKET.

    A street railroad transfer ticket, devised to keep a check on passengers and conductors with respect to the time when used, in part by means of a coupon, the body portion when the coupon is detached being receivable only during the forenoon hours, may properly be classed as an article to be used in a method of doing business, and as such is a "manufacture" within the meaning of Rev. St. § 4886 (U. S. Comp. St. 1901, p. 3382), and a proper subject of a patent.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 11, 12; Dec. Dig. § 13.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PATENTS (§ 13*)—SUBJECTS OF PATENTS—"MANUFACTURE."
     The term "manufacture," as used in the patent law, has a very com-
  'prehensive sense, embracing whatever is made by the art or industry of
  man, not being a machine, a composition of matter, or a design.
     [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 11, 12; Dec. Dig.
  § 13.*
     For other definitions, see Words and Phrases, vol. 5, pp. 4344–4346; vol.
  8, p. 7716.]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TRANSFER TICKET.
     The Pope patent, No. 805,153, for a time limit transfer ticket for use
  by street railroads, etc., was not anticipated and discloses patentable in-
  .vention; also *held* infringed.

Appeal from the District Court of the United States for the South-
ern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by William C. Pope against the Cincinnati Traction
Company. Decree for complainant, and defendant appeals. Affirmed.

Wood, Wood & Nathan, of Cincinnati, Ohio (William R. Wood,
of Cincinnati, Ohio, and Charles C. Linthicum, of Chicago, Ill., of
counsel), for appellant.

Hosea & Knight, of Cincinnati (Marcellus Bailey and James L.
Norris, both of Washington, D. C., of counsel), for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SATER,
District Judge.

KNAPPEN, Circuit Judge. This is a suit for the infringement
of claims 1, 3, 4, 7, and 8 of United States patent to Pope, No. 805,153,
November 21, 1905. The defenses are: (a) Nonpatentable subject-
matter; (b) anticipation; (c) lack of invention; and (d) noninfringe-
ment. The district court held the patent valid and infringed, and
made the usual decree for injunction and accounting, from which
this appeal is taken.

1. *Is the subject-matter patentable?* The invention relates par-
ticularly to "time limit" transfer tickets for use by street railways,
traction companies, etc. The stated objects of the invention are, in
substance, to enable the railroad company to make the transfer as
quickly as possible, and to keep check on conductors and passengers;
and thereby be able to determine whether a given transfer has been
correctly issued and whether lawfully presented by the passenger;
as well as to provide a transfer ticket which when used can prove
with certainty the correctness of the passenger's claim, thereby pre-
venting litigation in case a transfer issued for forenoon use is pre-
sented for afternoon fare, and for this reason refused by the con-
ductor.

The specifications disclose a ticket consisting of a strip of suita-
ble material (presumably paper) divided into a body portion and a
single afternoon coupon, the latter being separated, on the one side
from the body portion and on the other from the stub, by lines or
perforations or indentations, enabling the ready separation of the
body from the coupon, as well as of the latter from the stub. In the
"preferred embodiment" of the invention (Fig. 1) the body portion

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is provided with a column of abbreviations indicating the months of the year and with columns of numerals for the days of the month; also with an inscription containing the name of the issuing railroad and suitable instructions to the passengers, as to the limitations under which the transfer is usable. It bears also inscriptions indicating the transfer points, the conductor's number, and "conventional indications" showing the hour and fractions thereof. The body portions are consecutively numbered, correspondingly with the coupons, and contain the legend, "If no coupon attached hour punched is A. M. hour." The coupon contains the abbreviated name of the railroad and notice "not good if detached." This coupon denotes that the hour punched on body of (number) transfer is p. m. hour. In a modified form suggested the ticket and legends are somewhat different in details of inscription, but the net result of the information given is the same. In this modified form (Fig. 2) the coupon and body each contain a table of hours, the former on a dark ground, the latter on a light field. The drawings of the "preferred" and "modified" forms (Figures 1 and 2, respectively) follow, reference figures and extensions of reference lines being omitted:

It results that when the time limit on the body is punched and issued unaccompanied by the coupon, the transfer is for forenoon use only, but when issued with the coupon it shows on its face that it is only for afternoon use; and, as suggested in the specifications, in case of dispute reference to the conductor's number and to the pad containing the stubs and unissued coupons will readily disclose for what portion of the day the transfer was in fact issued.

Claim 1 reads:

"1. A transfer ticket comprising a body portion and a coupon, said body portion and coupon bearing conventional indications to constitute an antemeridian transfer ticket when said body portion is used separately and a postmeridian transfer ticket when used together."

Claims 3, 4, and 7 do not differ from claim 1 in respects material here.

Claim 8 reads:

"8. A transfer ticket comprising a body portion and a coupon and further provided with conventional indications to constitute a complete transfer ticket for one part of the day when said body portion is used separately and a complete transfer ticket for another part of the day when said body portion and coupon are used together."

[1] The patent is assailed as relating merely to "a method of transacting business, a form of contract, a mode of procedure, a rule of conduct, a principle or idea, or a permissive function, predicated upon a thing involving no structural law"; and counsel say that the ticket in question "has no physical characteristics which enable it to be distinguished from any other transfer ticket or from any other printed slip of paper." If this criticism is well taken, the subject-matter is not within the patent statute.[1]

[2] But while the case is perhaps near the border line, we think the device should be classed as an article to be used in a method of doing business, and thus a "manufacture" within the statute (Rev. St. § 4886 [U. S. Comp. St. 1901, p. 3382]). Broadly stated:

"The term 'manufacture,' as used in the patent law, has a very comprehensive sense, embracing whatever is made by the art or industry of man, not being a machine, a composition of matter, or a design."[2]

The device of the patent clearly involves physical structure. The claims themselves are, in a proper sense, limited to such structure.

The specifications describe a distinctive physical structure, viz., a given combination and general arrangement of body and coupon (with the suggestion that the two parts may be printed in different colors), accompanied by "conventional indications" and instructions for the use and interpretation of the ticket. But the alleged patentable novelty does not reside in the arrangement of the printed text, nor does such text constitute merely a printed agreement. The argument to that effect overlooks the important consideration that the body alone is good at one time, and that the body and coupon are required for the other portion of the day; and that the ticket bears on its face, whether the body is used alone or with the coupon, the distinguishing indications. Nor is there merely an attempt to patent a form of a contract. The specifications do not confine the construction to

---

[1] In re Moeser (Ct. of App. D. C.) 123 O. G. 655; Hotel, etc., Co. v. Lorraine (C. C. A. 2) 160 Fed. 467, 87 C. C. A. 451; United States Credit System Co. v. American Credit Indemnity Co. (D. C.) 53 Fed. 818; s. c., 59 Fed. (C. C. A. 2) 139, 8 C. C. A. 49.

[2] Language of Judge Acheson in Johnson v. Johnston (C. C.) 60 Fed. 618, 620. See, also, Riter-Conley Mfg. Co. v. Aiken (C. C. A. 3) 203 Fed. 699, 703, 121 C. C. A. 655, and cases there cited.

either the style, or printed arrangement or language of the legends. The essential thing is that the required information be conveyed on the face of the ticket. The authorities cited in the margin sustain, to a greater or less degree, the patentability of this device.[3]

Rand, McNally & Co. v. Exchange Scrip-Book Co. involved the patentability of an exchange scrip-book containing the essential feature that the units are expressed in money instead of miles as in ordinary mileage tickets, and avoided the necessity for calculation "by adopting a standard, expressed on the face of the ticket, that indicates to both carrier and traveller, without calculation, just what each one is entitled to." The language of Judge Grosscup seems peculiarly applicable here:

"Nor do we think that this patented concept is nothing more than a business method. Its use is a part of a business method. The ticket patented is not a method at all, but a physical tangible facility, without which the method would have been impracticable, and with which it is practicable."

The Benjamin Menu Card Case involved a combination of menu card with meal check. To the objection that it was "only for a piece of cardboard paper, with printed matter or composition on both sides thereof, and divided on one side by perforated lines employed in the system of doing business," Judge Seaman said:

"The fact that the structure may be of cardboard with printed matter upon it does not exclude the device from patentability, according to the patent office. * * *"

The presence of conventional indications and legends does not rob the structure of patentability. In more than one of the cases cited, the structures sustained as patentable bore conventional indications and information.

The cases relied upon by defendant are, we think, readily distinguishable from the instant case. In Re Moeser the device of the patent was characterized as "a form of proposed contract." The device involved in Hotel Co. v. Lorraine, was declared to be "simply a system of bookkeeping." In United States Credit Co. v. American Credit Co., the subject-matter was considered by the District Court as a method of transacting business. In the latter case (as considered by the Court of Appeals), as in most, if not all, of the other authorities relied upon, the patentability under the statute of the subject-matter involved does not seem to have been passed upon.

[3] 2. *Anticipation.* The strongest references presented to prove anticipation are the "Ham ticket" (covered by patent), "Exhibit 709," and the "Valley Junction" ticket. The Ham and No. 709 consist each of a ticket bearing two separate and independent tables of time figures, the one printed light on a dark ground and the other dark on a light ground, and apparently intended for forenoon and afternoon use respectively. The claims of the Pope patent read upon neither

[3] Johnson v. Johnston, supra; Rand, McNally & Co. v. Exchange Scrip-Book Co. (C. C. A. 7) 187 Fed. 984, 986, 110 C. C. A. 322; Thomson v. Citizens' National Bank (C. C. A. 8) 53 Fed. 250, 255, 3 C. C. A. 518; Benjamin Menu Card Co. v. Rand, McNally & Co., 210 Fed. 285 (opinion by Judge Seaman); Ex parte Wm. E. Watkins, decision of Duell, Commissioner of Patents.

of these devices, in letter or in spirit. Assuming that the different method of printing the two tables of time figures is, without other designation, a sufficient indication of intended forenoon and after-noon use respectively, neither of these references has the fundamental structure of Pope's device, which is a ticket comprising a body por-tion (always one and the same) plus a single coupon; the ticket being so constructed as that independently of any rule of conduct, as to punching or otherwise, the ticket when bearing the coupon is by that fact alone, and necessarily, good only for a given part of the day, and when without the coupon good only for another part of the day; for, if the tables of time figures found in "Exhibit 709" and the "Valley Junction" ticket are to be considered as coupons (as was apparently the intention of the Ham ticket, at least), we have a body portion plus two coupons, neither one nor both performing the office of Pope's coupon. If these tables are not to be treated as coupons, the departure from the Pope device is equally clear. It follows that in case of neither of these references can there be a complete trans-fer ticket for one part of the day when a "body portion" is used sep-arately and a complete transfer ticket for another part of the day when the "body portion" and coupon are used together. This conclu-sion can be avoided only by treating one of the coupons, when used in connection with the body portion, as a part of that body portion. Such construction is strained and unnatural. Nor is the result af-fected by the argument that the Ham ticket and No. 709 could be issued without detaching either the a. m. or p. m. end, the appro-priate time-table being punched; nor by the suggestion that Pope's ticket Fig. 2 could be so used, and still respond to the patent claims. These arguments ignore the actual physical structure of Pope's device as before set out. Conceding that there "could be no patentable nov-elty in a coupon ticket per se, nor in the mode of use involved in issuing a whole or a part only of a ticket," it is not the mode of use which is the subject of the patent, and the structural differences be-tween the Pope device and the prior art are, in our opinion, matters of substance and not merely form.

The Valley Junction ticket is even more plainly nonanticipatory. It was never intended for use as a transfer, but merely as a receipt or check for fare paid. It has in no sense a body portion and a cou-pon. It has, it is true, two narrow lines of figures (1 to 12 inclusive) running transversely across the end of the ticket, the one indicated as a. m., the other as p. m., and evidently intended to be appropriately punched. The only way in which the ticket could be considered as in any sense comprising a body portion and a coupon is by treating the line of p. m. figures as a coupon and the remainder (including the a. m. figures) as a body portion. This would be a forced and unreasonable construction.

In our opinion, the broad structural conception of the Pope trans-fer has not been anticipated.

3. *Invention.* Does the Pope device involve invention, or merely the expected skill of the printer or street car man? It need not be said that this is a question of fact. The question is less difficult when considered in connection with the utility of Pope's device and the

public favor it has met. In 1896 defendant began using the "709" transfers. So far as shown, no other company used that precise form. Until 1903 it used various unpatented forms, printed by the Webb Printing Company. In the latter year the Ham patent issued, the Pope patent issuing more than two years later. The Globe Printing Company had the sole right of manufacture under both patents. The defendant used the Ham ticket apparently until about the time the Pope patent issued, when it applied to the Globe Company for figures on a form covered by the claims of that patent; the Globe Company having manufactured according to those claims for some months before the patent issued. It did not, however, buy of the Globe Company but of the Webb Company, against whom and another of its customers infringement suits are pending; the testimony herein being, by stipulation, applicable thereto. It has ever since used this form of transfer, which is clearly an infringement of the Pope patent. The "tribute of its imitation" [4] is cogent evidence of the utility of the Pope transfer. Indeed, this utility is readily apparent as respects both facility and rapidity of use and effectiveness in preventing misunderstandings and misuse. It is novel and distinctive in form. It has been favorably received. Although its average price was slightly higher than that of the Ham, it has largely superseded that device, which was never used by more than 12 railway companies. The Pope transfer is used by 44 railway companies, included within 19 states, ranging from coast to coast and from Maine to Louisiana. Its annual sales are more than three times the sales of the Ham transfers during the entire period of 2½ years between the issues of the Ham and Pope patents, and bear the same ratio to the period of 2½ years following. From March 23, 1909, to February 1, 1910, the sales of the Pope transfers were 21 times greater than those of the Ham, which were then used by but three roads. Although the fact that an improvement has superior utility, and immediately supersedes other devices, is not material where the question of invention is not in doubt; [5] yet in case of doubt these considerations may determine the question of invention.[6] It may well be that, given the idea of the Pope patent, the expected skill of the printer or street car man would have been sufficient to determine the arrangement of printed text, and even

[4] Mr. Justice McKenna's expression in Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 441, 31 Sup. Ct. 444, 55 L. Ed. 527.

[5] Olin v. Timken, 155 U. S. 141, 155, 15 Sup. Ct. 49, 39 L. Ed. 100; Adams v. Bellaire Stamping Co., 141 U. S. 539, 542, 12 Sup. Ct. 66, 35 L. Ed. 849; Hollister v. Benedict, etc., Co., 113 U. S. 59, 72, 5 Sup. Ct. 717, 28 L. Ed. 901; Gould & Eberhardt Co. v. Cincinnati Shaper Co., 194 Fed. 680, 685, 115 C. C. A. 74, and cases cited; McClain v. Ortmayer, 141 U. S. 419, 429, 12 Sup. Ct. 76, 35 L. Ed. 800.

[6] Hollister v. Benedict, etc., Co., supra; Keystone Mfg. Co. v. Adams, 151 U. S. 139, 143, 14 Sup. Ct. 295, 38 L. Ed. 103; Potts v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275; Hobbs v. Beach, 180 U. S. 383, 392, 21 Sup. Ct. 409, 45 L. Ed. 586; Star Brass Works v. General Elec. Co., 111 Fed. (C. C. A. 6) 398, 49 C. C. A. 409; Kalamazoo Ry. Supply Co. v. Duff Mfg. Co. (C. C. A. 6) 113 Fed. 264, 51 C. C. A. 221; Dowagiac Mfg. Co. v. Superior Drill Co. (C. C. A. 6), 115 Fed. 886, 895, 53 C. C. A. 36; Electric Controller Co. v. Westinghouse Co. (C. C. A. 6) 171 Fed. 83, 87, 96 C. C. A. 187.

the form of legends; yet, in view of the history of the art, taking into account the apparent desire for a more effective transfer (as evidenced by the frequent changes in the use of unpatented devices), the superior utility of the device in suit, its novel and distinctive character, and the extent to which it has been accepted by the public, we think the device of the structure of the Pope transfer must be held to involve invention.

4. *Infringement.* As appears from what we have already said, we have no difficulty in holding that the transfer in use by the defendant at the time of and since the commencement of suit is an infringement of the Pope patent.

The decree of the District Court is affirmed, with costs.