MEMORANDUM DISMISSING BILL
LUHRING, J.
This is a bill in. equity brought by the plaintiff pursuant to the provisions of Tit. 35, Sec. 64, U. S. C. A., to require the Commissioner of Patents to issue a patent to him.
The invention involves a street railway transfer ticket, which is to be issued to transfer any passenger over one or more interconnected lines within a single fare zone or area of the system, by the most direct route to his destination, and which indicates whether or not the passenger.is attempting round trip travel or travel by a devious route.
The application, as presented to the United States Patent Office, contained sixteen claims, numbered 16 to 31 inclusive, all of which were finally rejected. The plaintiff here relies on claims 17, 21, 23 and 24 and consents that claims 16, 18, 19, 20, 22, 25, 26, 27, 28, 29, 30 and 31 may be dismissed.
Claims 17 and 23 are illustrative of the claims in issue and read as follows:
“17.. A transfer ticket for street railway and like systems, including a plurality of detachably connected coupons disposed in a row on a marginal strip portion of the ticket *157 and identifying localities along a given, issuing line of the system, the coupons being arranged in the order such localities are traversed by a carrier on said line, operating in one direction thereon, and a body portion carrying said coupons, and bearing horological data establishing the duration of validity, and bearing other data adapted to establish, when the coupons are selectively detached, transfer routing privileges and locality of passenger origin according to the number of remaining attached coupons.”
“23. A transfer ticket including a body portion and a row of detachable coupons marginally appended thereto, said body portion bearing a designation of the issuing line, said coupons being correlated to geographical localities along the issuing line and physically spaced from the body portion in the relative order of remoteness of the corresponding localities from the terminal of origin of the vehicle from which the transfer ticket is designed to be issued.”
The claims involved were rejected by the Examiner on the grounds (1) that such claims were unpatentable over prior patents of Hoffner, 1,029,293, June 11, 1912, and Laurier, et al., 1,408,523, March 7, 1922; and (2) that the claims were unpatentable as failing to define matter which may be covered by the patent statutes. The Board of Appeals affirmed the action of the Examiner on the first ground stated, but declined to affirm the rejection on ground two, and held that the claims now under consideration covered subject matter within the statute. A request for a rehearing was denied by the Board of Appeals, and the plaintiff proceeds here under Tit. 35, See. 63, U. S. C. A.
The Court will confine its consideration of the matter to the issue presented by the rejection of the claims on the ground (1), that is; that they are unpatentable over Hoffner and Laurier, et al.
As shown in Figure 2, the transfer consists of a body portion and a number of detachable coupons. The body contains printed data indicating the issuing line, date, *158 direction of operation of the vehicle, and the time of leaving the terminal. The different coupons have printed on them in succession the zone or points along the line where passengers board the car. Figure 1 of the drawings is a typical street railway system showing lines of railway running North and South, and intersecting lines running East and West. The North and South lines are indicated by letters of the alphabet and the East and West lines by numerals. The manner of the use of the transfer as stated by the applicant is as follows: .
“A conductor on a south bound F Street car leaving First Street, will be provided with a pad, say of 100 transfers, identical with the one shown in Fig. 2, except that each transfer, of course, bears a different serial number. The estimated requirement of transfers for the trip will be punched in portion D, to indicate approximate time of departure from the terminal. The pad will be placed in the tearoff holder in such manner that the cutting or tearing edge will coincide with line I, Fig. 2. All passengers boarding the car between First and Sixth Street, inclusive, will be given upon request and upon payment of fare a transfer torn from the pad with the holder so set that only one of the divisible coupons viz., one reading ‘First Street — Sixth Street’ will be attached to the body portion, the remainder of the divisible coupons remaining in the holder.”
When the passenger boards the car between Seventh and Thirteenth Streets on F Street, he will be given a transfer with two coupons attached, the process being the same through the various zones designated on the various coupons. As the more remote localities so designated are successively reached, the passenger receives a transfer with more and more coupons attached in accordance with the territory already traversed by the car. If the car is boarded beyond the last transfer zone or point, no transfer is issued.
The significant feature of this transfer system is that the transfer indicates the point where the passenger boards *159 the ear, and not where he is to leave it. Another feature of the transfer, as claimed by the applicant, is that it “provides for automatic routing, permitting transfer travel according to established rules, on certain or all of the carrier lines operating transversely to the direction of the issuing line or on any line paralleling the line of issuance, providing the passenger travels in the same direction on paralleling line as on the issuing line, or if original direction of travel must be reversed to reach passenger’s destination, the shortest route may easily be required.” It is also claimed that the collecting conductor may determine at once whether the passenger is attempting a round trip or to otherwise abuse the transfer privilege.
As noted above, the transfer ticket under consideration when delivered to the passenger on its face indicates the point where the passenger boarded the car and is evidence not only of that fact, but also of the privileges he is to enjoy with respect to transfers to connecting lines. By thus indicating the time and point of origin of the passenger, the collecting conductor is enabled to determine, when the transfer is presented, whether the time limit has expired and whether the passenger is properly proceeding to his destination, or is improperly undertaking a round trip.
This method of indicating points of origin and destination is not a new one. It was anticipated by Laurier, et al., which is the reference cited by the Examiner.
The Laurier invention relates to a conductor’s and passenger’s blank or record, which provides means to enable the company to detect fraud; to give a receipt to the passenger for the fare collected, whether it is in the form of cash fare, or a pass, ticket, etc.; and to indicate the time and point of departure of the passenger and his destination. The Laurier blank or record is made up of a body part and detachable coupon. The body part bears a list of stations *160 in consecutive order; the designation of the different fares; a number corresponding to each station, and a set of numbers to designate hours and minutes of the arrival and departure of a train for each station. The detachable coupon is the passenger’s receipt and bears the numbers corresponding to each station and the designation of the fare.
When boarding the train, and upon the payment of the proper fare, the conductor by appropriate punch marks on the record or receipt, makes a full record of the passenger’s point of departure and destination. He detaches the coupon or receipt and delivers it to the passenger.
The same result is accomplished by the plaintiff’s invention. The body of the transfer, with the appropriate coupon attached, when delivered to the passenger indicates his point of origin and thus fixes his destination at any point in the same direction and away from the point of origin. Furthermore, just as Laurier, the plaintiff, by means of the coupons retained by the issuing conductor, is able to determine the number of passengers boarding the car at various points.
The transfer shown in the Hoffner reference is particularly designated for use by street railways. In its structure it is identical with that of the plaintiff. It has a body portion bearing indicia for indicating issuing line, time of day, etc., and a coupon portion divided into a plurality of coupons marked to indicate various points along the line. It differs only in the manner of use. As we have seen, the plaintiff detaches the coupons at the point where the passengers enter the car, whereas Hoffner detaches them at the point of departure or transfer. Thus a passenger with the plaintiff’s transfer must board the other car at a place where his journey may be continued by the most direct route to destination, while the same passenger with the Hoffner transfer is required to board the car at the designated transfer point.
*161 It is assumed that most, if not all, passengers on street railways have in mind a definite destination when they hoard the car. Therefore, if the Hoffner transfer is in use on the typical system illustrated in Fig. 1 of the plaintiff’s drawings, one boarding the car at First and F Streets, with a destination on N Street between 12th and 13th Streets, would request a transfer to he used at 13th and F Streets. He would ride the connecting line from that point to N Street.
Given the same rules and regulations with respect to transfers, and with a simple arrangement of printed matter, the detachable coupons of Hoffner may he made to indicate areas or zones of origin of passenger traffic, so that a passenger boarding a car within any named area or zone may he given a transfer identical with that of the plintiff and with the same results.
There is no difference in physical structure between plaintiff’s and Hoffner’s transfer. The only difference is in the manner of use, and this difference is brought about in the arrangement of the printed matter on the coupons.
The printed matter on the transfer and its arrangement do not give the structure patentability. ‘ ‘ Patentable novelty can not be predicated on printing, but it must reside in the physical structure.” In re Clark, 58 Fed. (2d) 455; Cincinnati v. Pope, 210 Fed. 443; In re Sterling, 70 Fed. (2d) 910; In re Scott, 76 Fed. (2d) 136; In re Russell, 48 Fed. (2d) 668; In re Reeves, 62 Fed. (2d) 199.
It must, therefore, follow that the claims 17, 21, 23 and 24 here considered must be denied.
The hill is dismissed as to claims 16 to 31 inclusive.
Counsel will please prepare proper decree.