**MYERS v. COE, Com'r of Patents.**

**No. 6521.**

United States Court of Appeals for the District of Columbia.

Decided March 30, 1936.

Joseph H. Milans and Needham C. Turnage, both of Washington, D. C., for appellant.

R. F. Whitehead, Sol. of Patent Office, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing appellant's bill, filed under section 4915, Rev.St., as amended (35 U.S.C.A. § 63), to authorize the issuance of a patent.

The claimed invention relates to a system of designating traffic regulation violations by motorists. The specification discloses an automobile driver's permit and a license plate to be attached to the automobile. Attached to the license plate are tabs which may be detached therefrom. We here reproduce Figs. 1 and 2 of the application as illustrative of the license plate:

It is unnecessary to illustrate the driver's permit.

It is proposed to remove a tab from the license plate on violation of traffic law so that the plate will serve as a record of the driver's official standing in this respect.

According to the specification: "One of the leading ideas in connection with the invention is to provide a system whereby the driving record of automobile users will be carried about by the car in plain sight. In dealing with so difficult a question as safe motorcar driving, the present invention takes advantage of the very salutary effects produced by the pressure of public opinion."

Claims 15 to 24, inclusive, are involved.

■ Claims 15 and 16 are for a "method of assisting in the control of motorcar driving." We agree with the Patent Office and the court below that these two claims do not define patentable subject-matter. They do not define a "mode of treatment of certain materials to produce a given result," nor do they define "an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing." Cochrane v. Deener, 94 U.S. 780, 788, 24 L.Ed. 139.

■ Claims 17 and 18 are sufficiently broad to cover both the driver's permit and the license plate. There is nothing novel and, therefore, nothing patentable in the driver's permit. It differs from theater tickets, checks, and the like only in the manner in which it is to be used.

Claims 19 and 20 are specific to the driver's permit, and are unpatentable for the reasons already given.

■■ We now come to claims 21 to 24, inclusive. We reproduce claim 21 as illustrative of the group: "A license plate for vehicles, comprising a hard weather-resisting plate adapted for attachment to the exterior of a motor vehicle, and said plate having a main section carrying official indicia of the government issuing the plate and index of the particular plate, such as a number, and said main section having integrally attached thereto readily removable sections to constitute by their presence or official absence a driving record."

The Board of Appeals refused to allow these license plate claims on the ground that the structure covered "is frivolous."

The board directed attention to the fact that in the District of Columbia it has been the custom to provide blank spaces on the *operator's permit* for recording convictions of violations of traffic laws or regulations. The board added: "We do not believe it possible, however, that any state would consent to issue license plates of the type disclosed by appellant. The first thing that occurs to any one upon inspecting this plate is that mischievous children or others would punch out the symbols and thereby cause the driver embarrassment and perhaps humiliation. We consider the idea. absolutely impractical."

We are unable to agree with the reasoning and conclusions of the Patent Office as to these claims. Assuming that there might be instances of unauthorized removal of tabs, it would be a simple matter for a mechanic to design a guard or lock, as is done to prevent tampering with spare tires and the ignition. The appalling number of automobile accidents (30,000 deaths and over 1,000,000 injured annually) justifies a liberal attitude toward patent applications designed and reasonably calculated to reduce the number of accidents and discourage reckless driving. As recognized by the board, the opprobrium attaching to the driver of an automobile bearing symbols which denominate or stamp him as a speeder, reckless driver, etc., would strongly tend to curb such drivers.

According to an article in a current magazine,[1] violators of minor traffic rules in Huntington, Ind., receive, instead of a ticket, a warning from a policeman who pastes on the windshield a "scarlet letter" —a sticker bearing notice of the offense. This sticker must be left on for 30 days. A violation by a motorist "wearing" a tag results in a trip to a police cell to await a court hearing. Los Angeles has a similar scheme, using a windshield sticker labeled, "Traffic Violator."

We may notice that in the safety campaign being conducted in the District some of the local newspapers, presumably in an effort to make drivers conscious of their responsibility as well as of the value of the privilege of driving, are contributing valuable space to the publication of the names of persons convicted of speeding and reckless driving in addition to those whose driving permits are revoked or suspended.

[1] Article from Public Management, reprinted in Readers Digest, February, 1936, p. 55.

710

We think appellant's license plate discloses a new and novel idea and a means for practicing it. Guthrie v. Curlett (C.C.A.) 10 F.(2d) 725. In Cincinnati Traction Co. v. Pope (C.C.A.) 210 F. 443, 447, a "time limit transfer ticket" was held patentable because it was "not a method at all, but a physical tangible facility." So here, appellant's license plate may be characterized as a physical facility.

The decree is affirmed as to claims 15 to 20, inclusive; and reversed as to claims 21 to 24, inclusive.

Affirmed in part; reversed in part.