## LATZ et al. v. RELIANCE GRAPHIC CORPORATION et al. *
### No. 369.

Circuit Court of Appeals, Second Circuit.
July 25, 1938.

Weisman, Celler, Quinn, Allan & Spett, of New York City (Asher Blum, Murray C. Spett, and Ralph Wiener, all of New York City, of counsel), for appellants Reliance Graphic Corporation and Walter Frisch.

*Writ of certiorari denied 59 S.Ct. 154, 83 L.Ed. —.

Lind, Shlivek, Marks & Brin, of New York City (Max Shlivek and Saul S. Brin, both of New York City, of counsel), for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the defendants Reliance Graphic Corporation and Walter Frisch from an interlocutory decree holding Claims 1 and 2 of U. S. Patent No. 1,-460,492 issued to Harry Latz valid and infringed. We think the decree must be reversed both because the subject matter is not patentable and because even if this be not so, the patent lacks invention.

The patent relates to communication sheets—particularly to those of letter paper. The sheet has a main blank space adapted for a manuscript insertion or communication. It also has a border on which are printed pictorial designs generally with what are known as breathers. Within the border, and associated with the pictorial designs and breathers, are subsidiary blank spaces which are adapted to be filled in with the name of the recipient of the communication. The subsidiary blanks are so associated with the pictorial designs of the border that, when filled in, a natural completion of the printed design is effected. The border including the name, when filled in, conveys the impression of having been created especially for the particular person named therein. The patentee says that this makes the communication a very personal one and has a tendency to tickle the vanity of the recipient and that announcements or advertisements, when filled in the main blank space, are likely to receive attention if printed upon the sheet described with the name of the addressee properly inserted in the blank space in the border. He further says in his specification that the communication sheet itself thus becomes capable of compelling attention of a sympathetic kind to the contents of whatever may be contained in the main blank space, whether the same is in the form of a circular, a mimeographed reproduction or a personal note.

The supposed commercial advantage found in sheets conforming to the description in the patent is that they personalize advertising by conveying the thought that each sheet was prepared for its recipient, thus avoiding the possible unfavorable impression

given by advertising matter that is sent to any one having a mailing address.

The claims are for a product but are not limited to a particular kind of paper, shape, pictorial design or inscription.

The communication sheets have interested the trade and have achieved commercial success. The trial court held the patent valid and infringed.

The first question for discussion is whether the subject matter was patentable. Patents may be granted under the statute to persons who have invented or discovered any "new or useful art, machine, manufacture, or composition of matter * * *". The plaintiffs contend, and the court below held, that the communication sheet described in the patent in suit comes within the meaning of the word "manufacture". It is to be noted that the patented product has no physical characteristics other than the paper itself and the lettering and pictorial representations upon it, also that the value of the invention resides only in the idea of personalization and not in the sheet itself and that the achievement of the object of the invention is only reached when the blank is finally filled in with the name of the prospective customer. In our opinion these things are not enough to render the sheet an article of manufacture.

In Hotel Security Checking Co. v. Lorraine Co., 2 Cir., 160 F. 467, 24 L.R.A.,N.S., 665, this court had before it the Hicks Patent for a "method of and means for cash-registering and account-checking" designed to prevent frauds and peculations by waiters and checkers in hotels and restaurants. According to the patent each waiter was to be provided with slips marked with his number. The person in charge of the department supplying food to the waiters was to be given a sheet of paper ruled lengthwise in parallel columns, each waiter having a particular column exclusively appropriated to him. If, for example, Waiter No. 4 received an order for food, he would go to the kitchen department and, when the order was filled, would exhibit his tray to the checker who would enter the price of each article on the waiter's slip and also on his own sheet under the column No. 6. Judge Coxe, writing for the court, said (page 469): "It is manifest that the subject-matter of the claims is not a machine, manufacture or composition of matter. If within the language of the statute at all, it must be as a 'new and useful art.' * * * A blank sheet of paper ruled vertically and numbered at the top cannot be the subject of a patent, and if used in carrying out a method, it can impart no more novelty thereto, than the pen and ink which are also used."

It is true that in Mitchell v. International Tailoring Co., C.C., 170 F. 91, Judge Ward expressed the opinion that a certain advertising device made of folding cardboard was a manufacture and patentable if it involved invention. The object of the device was to encourage those receiving it to keep the name and address of the sender instead of throwing the communication into the waste basket. The method devised was to print the name and address of the sender on one side of the top fold of the cardboard sheet and to have on the other side a picture which the receiver might detach from the remainder and keep. The decision dealt with a physical structure, part of which was intended to be detached from the other part and kept by the recipient as a gift. Judge Ward had the same view as the Court of Appeals for the Sixth Circuit in Cincinnati Traction Co. v. Pope, 210 F. 443, 446, where a patented transfer ticket for use by street railways was held to be an article of manufacture. The court there said:

"The device of the patent clearly involves physical structure. The claims themselves are, in a proper sense, limited to such structure.

"The specifications describe a distinctive physical structure, viz., a given combination and general arrangement of body and coupon (with the suggestion that the two parts may be printed in different colors), accompanied by 'conventional indications' and instructions for the use and interpretation of the ticket. But the alleged patentable novelty does not reside in the arrangement of the printed text, nor does such text constitute merely a printed agreement. The argument to that effect overlooks the important consideration that the body alone is good at one time, and that the body and coupon are required for the other portion of the day; and that the ticket bears on its face, whether the body is used alone or with the coupon, the distinguishing indications. Nor is there merely an attempt to patent a form of a contract. The specifications do not confine the construction to either the style, or printed arrangement or language of the legends. The essential thing is that the required information be conveyed on the face of the ticket."

See also Benjamin Menu Card Co. v. Rand, McNally & Co., C.C., 210 F. 285.

In Rand, McNally & Co. v. Exchange Scrip-Book Co., 7 Cir., 187 F. 984, a patent was held valid, providing for a scrip book containing a series of coupons to be detached and exchanged for passage tickets. The essential feature was that the units were expressed in money instead of in miles, as in case of ordinary mileage tickets, so as to adapt them to more convenient use on transportation lines having different rates. This device, like the transfer ticket in Cincinnati Traction Co. v. Pope, supra, possessed a physical structure calling for a detachment of portions of it to pay fares. The court said that its use was not a mere method of doing business "but a physical tangible facility, without which the method would have been impracticable, and with which it is practicable." See 187 F. page 986. It is to be observed that such tickets always have had physical characteristics apart from the mere paper, lettering and numbering, particularly detachability of portions corresponding with mileage or amount. In Myers v. Coe, 65 App.D.C. 362, 83 F.2d 708, there was ground for holding automobile license plates articles of manufacture within the meaning of the patent law, like the transfer tickets in Cincinnati Traction Co. v. Pope, 6 Cir., 210 F. 443, because the tabs attached to the license plates were removable. The decision of the same court in Application of Sheffield, 53 App.D.C. 109, 288 F. 463, where an improved method for visually indicating the structure and meaning of a sentence by printing in type of different kinds was held patentable is an extension of the Cincinnati Traction Case and seems in conflict with our own in Hotel Security Checking Co. v. Lorraine Co., 2 Cir., 160 F. 467, 24 L.R.A.,N.S., 665, which we are inclined to follow.

◼ The Court of Customs and Patent Appeals in a line of recent cases has affirmed rejection of applications for patents where the novelty has consisted simply in the arrangement of printing on paper. In re Dixon, 44 F.2d 881; In re Russell, 48 F.2d 668; In re Reeves, 62 F.2d 199; In re Lockert, 65 F.2d 159; In re Sterling, 70 F.2d 910. In the Sterling decision, page 912, that court said that: "* * * patentable novelty cannot be predicated upon printing alone, but must reside in physical structure." It viewed all prior cases in the lower federal courts in which printed matter was involved and the patents were sustained, as presenting some new and useful physical form with printed matter adjusted to such form. In determining the proper classification of the subject-matter of patents and whether any particular subject-matter is patentable, the decisions of the Court of Customs and Patent Appeals, which is constantly concerned with such administrative questions, are entitled to weight. As is evident from the foregoing citations that court has for some time been standing firmly against the patentability of such a device as we now have before us.

◼ The last matter for consideration is whether the devising of the communication sheet involved invention. The use of figures with breathers was long known, and the insertion of the name of each addressee in advertising matter equally so. The patentable novelty supposed to exist in the Latz device consists of the insertion of the name of the addressee within the border of the breather. The idea that such a placing of the addressee's name involves invention or justifies the monopoly afforded by a patent seems to us entirely unfounded. The device shown in U.S. Patent No. 861,747 issued to Mitchell which was before Judge Ward in Mitchell v. International Tailoring Co., C.C., 170 F. 91, if the picture on the back of the fold had been that of the customer, would have embodied the general type of advertising described in the patent in suit and would closely have approximated the form of the advertising shown in Exhibit 16 which is alleged to infringe. All sorts of variations of this advertising can be readily imagined and actually created without calling for the exercise of any inventive faculty. Such advertising as is shown in defendants' Exhibits A–1 and B–1 illustrates ordinary types of advertising which lack only the insertion of the name of the addressee within the border of a breather to come within the patent. That an advertiser would become an infringer by inserting the name of his customer within that border seems fantastic.

The decree is reversed with directions to dismiss the bill.