33 C.C.P.A.(Patents)

## In re HANSEN.
### Patent Appeal No. 5131.

Court of Customs and Patent Appeals.
April 1, 1946.

Charles O. Bruce, of Berkeley, Cal. (Edward Brosler, of Berkeley, Cal., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C.

of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner rejecting the ten claims, numbered 1 to 10, inclusive, embraced in appellant's application for patent entitled "For Business Records." No claims were allowed.

It is said in the brief for appellant that the form of record involved was developed in connection with the keeping of records for chain-store systems, with one of which systems appellant had been connected prior to making up the form, and that it has been adopted in a limited territory by the system (a chain-store-grocery system) with which he was associated. An affidavit of appellant as to the extent of use by the system constitutes a part of the record.

The claims are not limited to chain-store systems, however, and evidently the form can be used in any business to which it is adaptable.

Claims 1 and 10 which are fairly illustrative of the alleged invention read as follows:

"1. The combination of a foundation form having a plurality of columns determined by spaced vertical lines and suitable indicia disposed at an end of certain of said columns identifying the same; and a plurality of ruled strips each of the approximate width of a column and individually attachable to said foundation form in a column thereof and having an indicia thereon corresponding to that at the end of one of said columns, said strips being somewhat shorter than said columns whereby upon application of said strips to said foundation form, the indicia on said columns may be exposed to indicate proper or improper location of strips on said foundation form.

"10. A system of preparing business records, comprising a plurality of foundation forms each having a plurality of columns and separate identifying indicia disposed at the ends of said columns, and a plurality of sheets, of less length than said columns and each provided with vertical scores to form a plurality of detachable strips, each of said vertical strips having indicia thereon corresponding with indicia at the end of that column of each said form with which it is to be associated, whereby upon application of each strip to said form, the indicia on said form may be exposed to indicate proper or improper location of strips on said form."

The drawing of appellant's application, as described in the specification, discloses a foundation sheet lined vertically and divided into columns by horizontal "guide" lines. At the top of the respective columns are printed the names of different departments of the store such as "Milk and Cream," "Bread and Cake," "Produce," etc. Vertically ruled strips (preferably having their backs coated with an adhesive) approximating, or somewhat narrower than, the width of the columns on the foundation sheet are attached to that sheet, the strips having at their tops printed indicia similar to the names at the tops of the columns of the foundation sheet. The strips are shorter than the columns and are so attached that the names in the columns remain visible. Consequently, if one of the strips is placed over the wrong column the mistake is easily discernible and, as stated in the brief of the Solicitor for the Patent Office, "When a foundation form has been completely filled with appropriate strips, useful information as to the daily delivery to any one department of the entire chain can readily be obtained by adding the column vertically."

So, as epitomized in the brief for appellant the structure embraces four elements alleged to be basic, viz.: " * * * (1) a foundation form having columns, (2) indicia on said foundation form identifying such columns, (3) strips attachable in the columns of the foundation form in a manner to leave the column indicia exposed, and (4) corresponding or matching indicia on such strips."

The brief further alleges that "The absence of any one of these basic elements divests the invention of its identity," and "This is important from the viewpoint of the prior art."

In addition to the four features designated in appellant's brief as basic, common to all the claims, the brief (referring to them as "refinement" features) directs attention to certain limitations in claims 2, 3, 4, 7, and 8, but there is no contention that such limitations form patentable subject matter independently of the so-called basic

elements. In other words, all ten claims stand or fall together.

The Primary Examiner rejected the claims upon two grounds, one being that of aggregation.

The board reversed as to that ground and it is not involved before us.

The other ground was that the claims are unpatentable over prior art as disclosed in the following references:

| | | | |
|---|---|---|---|
| Lubin | 1,318,163 | Oct. 7, 1919 |
| Wilford | 1,634,240 | June 28, 1927 |
| Pezze (Br.) | 352,442 | Jan. 6, 1930 |

The Lubin patent is for an order blank for use by the customers of mail-order houses. It consists of a sheet ruled horizontally for columns designated A. B. C., etc., and vertically for listing the goods desired, descriptions and prices being stated in the appropriate columns. At the top of the sheet the name of the mail-order house appears in print underneath which are vertical lines for the name. and address of the customer. The specification recites:

"In carrying out the present invention I provide duplicate order blanks which are appropriately ruled and designated. The upper of these blanks, or the original, is formed with a carbonized backing, whereby the indicia will be transferred to the second blank, which blank is formed with a series of fields divided by perforations, so that the different parts of the duplicate sheet may be removed and applied to the address label of the package forwarded to the customer and the others to department sales checks, the back of the second blank being gummed for this purpose.

\* \* \* \* \* \*

"Referring to Fig. 2, it will be seen that the carbonized back of sheet 10 will transfer all of this indicia to corresponding columns on the second sheet 11. The different items upon this sheet, however, are separated by perforated lines 12 which extend the width of the blank. Due to this arrangement the various items may be torn from the blank and separated from each other so that they may be fixed by their gummed back to department sales checks, thus eliminating transcription as is now the practice."

The Wilford patent is for a form of insurance policy contract. It discloses a sheet ruled horizontally and vertically, spaces being indicated by lines in which spaces are to be placed a plurality of detachable strips for data, each strip registering with the appropriate space. It is a complicated form which need not be described in detail.

The Pezze (British) reference seems to be an application published by the British Patent Office upon which no patent was issued because the application was not accepted within the time fixed by British law. It appears to be a form for use in accountancy. It is captioned "Improvements in Book-keeping Appliances." It discloses a sheet, marked 1 in the drawing, gummed on one of its faces, with perforated horizontal lines for separating the entries and vertical lines for separating the creditor and debtor entries. A carbon sheet is provided by means of which the entries on sheet 1 are reproduced on another sheet. We hereinafter express our view concerning this reference.

In the statement of the examiner made following the appeal to the board it was said that each of the cited references "discloses a sectional record sheet separable into strips and provided with a gummed back, which are adapted to be secured to a foundation sheet to avoid copy work. The foundation sheet may be provided with any printed matter desired."

Following the foregoing statement, the examiner continued: "Printed matter does not relate to physical structure and [,] where *the sole distinction over the art,* it is not within the provisions of the patent statute." (Italics ours.)

In support of the holding last quoted the examiner cited the case of In re Sterling, 70 F.2d 910, 21 C.C.P.A., Patents 1134.

The authority so cited supports the examiner's holding so far as the holding relates to "printed matter."

So far as we are aware, no patent has ever been granted upon a structure wherein the *sole* distinction over the art consisted of printed matter.

As we understand appellant's contentions here, however, he does not rely upon the printed matter as the *sole* distinction between his structure and the structures disclosed by the references, but treats it merely as an element incidental to the arrangement of the columns and strips described. Neither the specification nor the claims use the term "printed matter," but both use the term "indicia," which indicia is shown in the drawing in printed form.

In the Sterling case, supra, we made reference to the case of Cincinnati Traction Co. v. Pope, 6 Cir., 210 F. 443, and to our

discussion of it in the case of In re McKee, 64 F.2d 379, 20 C.C.P.A., Patents 1018, and stated, in substance, that we thought the decision (in the Traction Co. case) had sometimes been misunderstood or misconstrued.

Numerous patents have been granted on structures containing printed matter. The Lubin and Wilford patents used as references in this case are examples, but that matter did not of itself render the structures patentable. It was merely an incidental part of the structures taken as a whole.

We do not understand that either the examiner or the board rejected the instant claims solely on the basis of printed matter shown in the drawing. The rejection was simply on the ground that, in view of the structures shown in the prior art cited, no invention was involved in providing the particular form of business record which appellant made up.

A feature of his form emphasized by appellant is that of the proportions—length and width—of the strips attached to the columns outlined on the foundation sheet. As to width, some of the claims which refer to that element recite the strips as being of the "approximate width" of the columns, while others describe them as being narrower. All the claims which mention "length" define it is being less than the length of the column.

The purpose of making the strips shorter than the length of the columns of the foundation sheet to which the strip is attached obviously is to leave the column indicia exposed, so that the strips, also having indicia, may be attached to the right column.

The examiner's statement contained no discussion of the features of length and width of the strips.

The board stated in one part of its opinion that "Pezze does not show the strip made shorter than the foundation column," and in another part "Pezze shows a strip with space for the indicia but is silent as to indicia on the foundation sheet." The examiner did not discuss the Pezze reference in his statement (nor did he discuss either of the other references) except as hereinabove quoted.

We are unable to find in the Pezze reference any disclosure which we regard as pertinent to the issues here involved.

With respect to the other references the board said:

"The strips of Wilford (Fig. 8) appear to be shorter than the foundation column but the indicia on the two columns as stated in the claims are not found in Wilford. Lubin likewise has only a broad teaching of applicant's invention.

"Wilford shows a general arrangement which can be said to correspond to claim 9."

The board pointed out that claim 10 "is merely for the use of the strip and foundation," and added:

"As to the other claims, we do not see that it makes any difference whether the strip width is the same as that of the foundation column or slightly less (claims 7, 8).

"The dollars and cents line of claims 7 and 8 is not a physical structure and in any event is not patentable."

It will be noted that the board stated that the strips of Wilford appear to be shorter than the foundation column. This evidently was based upon its deduction drawn from viewing the figure of the Wilford drawing referred to. We do not find any teaching to that effect in the specification, and, so far as the purpose of the strips in the Wilford patent is concerned, their lengths would not seem to be material.

In appellant's form, length is a material feature, but the board evidently was of opinion that it was not an inventive act to make the strips of the desired length.

From our examination of appellant's structure and our comparison of it, taken as a whole, with the structures of the references, taken as a whole, we feel constrained to differ with the board's decision affirming that of the examiner.

We think it obvious that appellant has developed a form of record substantially different from the forms shown in the references, and that appellant's form is novel and useful.

It would be impossible for anyone, however greatly skilled in the art, to take the form of Lubin, for example, and use it as appellant's form is used. The same is true of the Wilford form. Also, it is obvious that no one, however greatly skilled in the art, could take the Lubin and Wilford structures and combine them into a structure which would meet appellant's structure.

We think appellant's structure differs materially from each of them.

We have hereinbefore stated that upon the feature of "printed matter" the Ster-

lling case, supra, supports the holding upon *that* feature. It is not here controlling upon the question of *structure*, however, because of the differences of fact.

The decision of the board is reversed.

Reversed.